UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

AMANDA LAVERENZ,
on behalf of herself and
all others similarly situated,

        Plaintiff,               Case No. 22-cv-692

    v.

PIONEER METAL FINISHING, LLC,

        Defendant.

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION OF NOTICE TO SIMILARLY SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)

Defendant, Pioneer Metal Finishing, LLC ("Pioneer"), by and through its counsel, Michael Best & Friedrich, LLP, opposes Plaintiff's Motion for Conditional Certification and Authorization of Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) and related materials (Dkt. ##47-51) ("Plaintiff's Motion") for the reasons set forth herein.

## INTRODUCTION

Plaintiff's Motion acknowledges, as it must, that timeclock "rounding is not *per se* unlawful." (Dkt. #47, p. 2.) There is no dispute Pioneer's quarter-hour rounding policy is facially neutral and the named and putative plaintiffs were subject to it. The question for this Court is whether Plaintiff's Motion is supported by sufficient evidence to establish Pioneer's rounding policy is "inconsistent with the FLSA" and fails to compensate current and former employees properly over time. (*Id.,* p. 12.)

To answer this question, the Court should reject the "lenient," "modest factual showing" standard in Plaintiff's Motion and instead apply the heightened proof requirements found in *Clark v. A&L Homecare and Training Center, L.L.C.*, 68 F.4th 1003 (6th Cir. 2023), *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), or *Miller v. ThedaCare Inc.*, No. 15-C-506, 2016 U.S. Dist. LEXIS 116467 (E.D. Wis. Aug. 29, 2016). In so doing, this Court should also require Plaintiff's Motion be supported by actual, admissible evidence.

As argued below, Plaintiff's collective definition is defective and should either be rejected outright or substantially modified. Plaintiff's Motion also lacks the evidence necessary to allow the named plaintiff to represent the proposed collective, both in whole and in part. Finally, the record evidence establishes that Pioneer's timeclock rounding policy is neutrally applied and does not violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* or any other law.

For these reasons, this Court should deny Plaintiff's Motion.

## RESPONSE TO "STATEMENT OF FACTS"

Plaintiff's Motion downplays the differences in Pioneer's facilities and the jobs within those facilities. This is likely because neither declarant Laverenz nor declarant Brantmeier have knowledge of the operations, job duties, responsibilities, or pay policies and practices outside of Green Bay or outside the particular jobs they held. (Benson Dec., Ex. 1, pp. 28-30, 60, 79-80, Ex. 2, pp. 36, 43-45, 60-61, 68, 83-86, 112-113,-123-125, 130.)

In reality, each Pioneer facility has its own unique layout (timeclock locations included), employs different finishing processes, and has unique personal protective equipment requirements depending on the job. (Hause Dec., ¶2.) Moreover, within the facilities themselves hourly employees work over 20 different jobs – with at least 23 unique written job descriptions – in multiple departments. (*Id.,* ¶3, Ex. 1.) Within this work matrix, there are different levels of

responsibility. Supervisors (salaried) and production support personnel (hourly paid) oversee operations. "Leads" within certain departments (hourly paid) take on added production responsibility and help the supervisors and production support personnel facilitate "hand offs" between shifts. The "rank and file" employees (hourly paid) are responsible for production. (*Id.,* ¶4.) The work they perform prior to the start of their shifts varies greatly. (*Id.*; *see also* Benson Dec., Ex. 1, pp. 122-125 (noting, among other things, "rank and file" production employees do not have pre-shift handoff meetings.)

While it is true that employees are subject to the written pay policies in Pioneer's Employee Handbook, neither Ms. Laverenz nor Mr. Brantmeier recall reading them. (Benson Dec.*,* Ex. 1, p. 59; Ex. 2, p. 66.) Similarly, neither could recall an instance where an employee was disciplined for a timeclock violation. (*Id.,* Ex. 1, pp. 139-140; Ex. 2, p. 128.) And because Ms. Laverenz left Pioneer in July 2022, she was not aware of the shift change and clean up bells that Mr. Brantmeier testified were recently implemented. (*Id.,* Ex. 2, pp. 125-127.)

Roughly half of the "Statement of Facts" section in Plaintiff's Motion is devoted to a discussion of Pioneer's analysis of former named plaintiff Ryan Moore's time entries, and a spreadsheet ostensibly created by "a third-party consultant." (Dkt. #48, pp. 7-9.) Both will be discussed in some detail in the Argument section, but a few items are worth noting here.

Mr. Moore worked at Pioneer's Green Bay facility from February 2022 to June 2022 – roughly four months. (Dkt. #1, ¶¶ 26-27.) He never gave testimony in this case, despite Pioneer's efforts to depose him. (Dkt. ##38-39.) Thus, irrespective of the amount of his time allegedly "shaved" by operation of Pioneer's rounding policy, there is no proof from Mr. Moore (or anyone else) that any of this time was spent actually working.

3

The "third-party consultant" is never identified in Plaintiff's Motion. While this unnamed individual allegedly "analyze[d]" Pioneer's timekeeping records and "calculate[d]" the number of hours "shaved" and "gained" by its employees (Dkt. #48, p. 7), the method by which s/he did so is unknown, as are his/her qualifications to perform this exercise. Moreover, while Pioneer provided three years of timekeeping data appliable to 427 hourly employees from the Green Bay facility (*Id.,* pp. 7-8, fn.4), Plaintiff's Motion focuses on only a single year and 251 employees. (*Id.,* p. 8.) In contrast, Attorney Walcheske's declaration includes a summary of all three years and reveals a declining trend in the total, the ratio, and the average hours ostensibly "shaved" by Pioneer's rounding policy. (Dkt. #51.) No explanation is provided for this phenomenon.

Additional facts and additional responses to the "Statement of Facts" are set forth in Pioneer's Argument section that follows.

## ARGUMENT

## I. THE LEGAL STANDARDS GERMANE TO PLAINTIFF'S MOTION.

### A. Plaintiff's Burden of Proof at the Conditional Certification Stage Should *Not* be "Lenient" and Should Require More than a "Modest Factual Showing."

The FLSA permits a collective action "against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The district court has discretion to implement an "opt-in" procedure to facilitate notice to potential plaintiffs. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The "critical inquiry" is determining whether the representative and putative plaintiffs are similarly situated. *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

This Court has acknowledged "[n]either the FLSA, the Supreme Court, nor the Seventh Circuit has provided guidance on how the court is to determine whether the representative plaintiff is 'similarly situated' to the potential plaintiffs." *See Adair v. Wis. Bell, Inc.*, No. 08-cv-280, 2008

4

U.S. Dist. LEXIS 68942 at *3 (E.D. Wis. Sept. 11, 2008); *Brant v. Schneider Nat'l Inc.,* No. 20-cv-1049, 2021 U.S. Dist. LEXIS 105647 at *4 (E.D. Wis. May 4, 2023).[1] Nonetheless, each time it has decided a motion for conditional certification, this Court has used the two-step procedure that originated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

Indeed, since *Lusardi*, most district courts have followed this approach. *Clark*, 68 F.4th at 1008 (noting *Lusardi* has been used in most district courts); *see also Brant,* 2023 U.S. Dist. LEXIS 105647 at *4 ("[D]istrict courts within the Seventh Circuit, like most federal courts across the country have applied a two-step test to determine whether an FLSA claim may proceed as a collective action."). Plaintiff's Motion does so too, emphasizing its "lenient" and "modest" standard of proof. (Dkt. #48, pp. 9-11.)

### 1. **The Fifth and Sixth Circuit reject *Lusardi*.**

The Fifth and Sixth Circuits have rejected the *Lusardi* approach. *Swales,* F.3d at 433-434; *Clark,* at 1013. In *Swales*, the Fifth Circuit noted *Lusardi's* two-step model has "no anchor in the FLSA's text or in Supreme Court precedent interpreting it." *Swales*, 985 F.3d at 434. The court set out a new approach that rigorously scrutinizes "similarly situated" workers at the outset of the case, not after a lenient step one conditional certification analysis. *Id*. The Fifth Circuit stated district courts may only facilitate notice if named plaintiffs show putative opt-in plaintiffs are "actually" similarly situated. *Id*. at 433.

The Sixth Circuit in *Clark* also rejected *Lusardi*. It suggested most district court's 30-plus year adherence to *Lusardi* may be due to "anchoring bias"[2] and rejected its characterization of the

---

[1] Cited unpublished decisions are attached as Exhibit 3 to the Benson Dec. per Civil L.R. 7(j)(2).

[2] "Anchoring bias" is the tendency of persons to rely heavily on the first piece of information they receive when making decisions. *See, e.g.,* Am. Psychol. Ass'n, Dictionary of Psychology, Primacy Anchoring Bias, available at https://dictionary.apa.org/primacy-effect.

notice determination as "certification," conditional or otherwise. *See Clark*, 68 F.4th at 1008-09. The Sixth Circuit methodically deconstructed and analyzed the showing necessary to facilitate notice to "other employees" under the FLSA. *Id.,* at 1010-11. It reasoned:

> A district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction. Both decisions are provisional, in the sense that the court renders a final decision on the underlying issue (whether employees are "similarly situated" here, success on the merits there) only after the record for that issue is fully developed; yet both decisions have immediate consequences for the parties … What the notice determination undisputedly shares in common with a preliminary injunction decision … is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision.

*Id.* The Sixth Circuit rejected *Lusardi's* "modest factual showing standard" and held "that for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.,* at 1011. Notably, "[t]he strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, ***to employees who are in fact similarly situated;*** and it would strike the same balance that courts have long struck in analogous circumstances." *Id.* (emphasis added).

## 2. <u>The Seventh Circuit's approach</u>.

The Seventh Circuit has neither adopted nor rejected *Lusardi. Lamarr v. Illinois Bell Telephone Co*., No. 15-C-8660, 2017 U.S. Dist. LEXIS 79241, *5 (N.D. Ill. May 24, 2017) (noting the Seventh Circuit "has recognized that district courts employ the two-step process and has not indicated that the process was improper"). In the absence of clear Seventh Circuit guidance, in *Brant* this Court rejected *Swales* and continued to use the *Lusardi* approach. *Brant*, 2023 U.S. Dist. LEXIS 105647, at *6. Its rationales were that "*Swales* is not binding on this court," and other courts have "refused to adopt *Swales* and continued to adhere to the two-step approach." *Id.* While

the first rationale is true, it is also true that **Lusardi** has never been binding on this Court and there is no Seventh Circuit precedent requiring it to apply the two-step approach. The second rationale is predicated on the "anchoring bias" phenomenon called out in *Clark.* Simply because *Lusardi* "has been long applied by courts in this district and throughout the Seventh Circuit," *id.,* at *7, does not address the merits of *Swales'* critique of *Lusardi* (specifically how it is untethered to the FLSA text and Supreme Court precedent) and says nothing about the analysis in *Clark* which, in fairness, it could not have because *Clark* was decided two weeks after *Brant.*

Notwithstanding this Court's rejection of *Swales* it has nonetheless recognized circumstances where a heightened standard of proof should be used at the conditional certification stage. *See Miller,* 2016 U.S. Dist. LEXIS 116467, at *15-16. In *Miller*, this Court applied an "intermediate" standard to plaintiff's motion for conditional certification where, as here, discovery had been undertaken. *Id.* (citing *Aguilera v. Waukesha Mem'l Hosp., Inc.*, No. 13-C-1245, 2014 U.S. Dist. LEXIS 114418, at *8 (E.D. Wis. Aug. 18, 2014); *see also Boelk v. AT&T Teleholdings, Inc.*, No. 12-CV-40-BBC, 2013 U.S. Dist. LEXIS 20606, at *40 (where significant discovery occurred, it was appropriate to apply more scrutiny)). Thus, in exercising its discretion here, nothing requires this Court to apply the "lenient" and "modest factual showing" standard of proof endorsed by Plaintiff's Motion.

### 3. <u>This Court should apply a heightened standard to Plaintiff's Motion</u>.

*Hoffmann-La Roche* is the only Supreme Court decision addressing FLSA certification. It gave district courts discretion to authorize notice to potential plaintiffs of their ability to opt-in to FLSA collectives but did not provide a certification procedure. *Hoffmann-La Roche*, 493 U.S. at 170-71, 174. And just as there has not been a legal standard established for FLSA certification, there is no definition of the "similarly situated" requirement. *Thiessen v. GE Capital Corp.*, 267

7

F.3d 1095, 1102 (10th Cir. 2001). As noted in *Swales,* nothing in the FLSA's text requires a "lenient" standard of proof or a "modest factual showing" to establish the named and putative plaintiffs are "similarly situated." Nowhere is reference made to a "two-step" analysis.

This Court should ***not*** employ the "lenient" "minimal showing" standard of proof endorsed in Plaintiff's Motion. (Dkt. #48, pp. 9-11.) It should adopt a higher standard. Whether it be the rigorous scrutiny and actual proof standard from *Swales,* the strong likelihood standard from *Clark,* or the intermediate standard this Court used in *Miller,* Plaintiff's Motion should be required to offer admissible evidence and actual proof that the named and putative plaintiffs are similarly situated to one another. The reasons for doing so are at least twofold.

*First,* the "lenient" two-step framework endorsed by *Lusardi* undermines the purpose of the FLSA's notice and opt-in requirements. The Supreme Court noted that this requirement was supposed to mitigate against "excessive litigation spawned by plaintiffs lacking personal interest in the outcome." *Hoffmann-La Roche*, 493 U.S. at 173. Applying a "lenient" standard whereby plaintiffs need only make a "modest factual showing" to establish the named and putative plaintiffs are similarly situated, the Court encourages, rather than negates, participation by plaintiffs lacking a genuine personal interest in the outcome of the case. This problem is not cured if, at the so-called second stage of the case, "the court determines whether the plaintiffs are in fact similarly situated to those who have opted in" and the class is decertified. *Kelly v. Bluegreen Corp.,* 256 F.R.D. 626, 629 (W.D. Wis. 2009). A "collective" has been conditionally certified, notice has been sent, and opt-in forms returned, all at defendant's expense. The harm has been done.

*Second,* using a heightened standard of proof is consistent with Seventh Circuit case law stressing the similarities between Rule 23 class actions and FLSA collective actions. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[t]here isn't a good reason to have

different standards for certification of two different types of action, and the case law has largely merged the standards")). Rule 23 only permits class certification after a "rigorous analysis" of its prerequisites, requiring "the court to probe behind the pleadings." *Comcast v. Behrend,* 569 U.S. 27, 33 (2013). This is due, in part, to the district judge's obligation to "define, redefine, subclass and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).

Neither Supreme Court case law nor the text of the FLSA suggests courts should delay application of similar heightened scrutiny to *Lusardi's* so-called second step. Indeed, step one requires courts to define and redefine proposed class definitions. *See e.g., Collazo v. Forefront Educ., Inc.*, No. 08-cv-5987, 2010 U.S. Dist. LEXIS 7661, at *14-15 (N.D. Ill. Jan. 28, 2010); *Baldridge v. SBC Communs., Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (recognizing the court's power to limit the scope of a proposed FLSA action); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.'"). Courts also examine the adequacy of representative plaintiffs and determine whether they are similarly situated to the putative plaintiffs at the notice stage. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 U.S. Dist. LEXIS 101297, at *5 (S.D. Tex. Dec. 11, 2008) (if job duties among members vary significantly, then class certification should be denied).

The only reason a heightened standard of proof is not required at the notice stage is because since *Lusardi* courts have "continued to adhere to the two-step approach." *Brant*, 2023 U.S. Dist. LEXIS 105647 at *6. For the reasons above, this Court should not continue on this course as it

contravenes the original aim of the opt-in requirement and prolongs an approach that is without basis in Supreme Court law and statutory text.

### B. Plaintiff's Motion Requires Actual, Admissible Evidence.

In *Adair,* this Court noted the split within and outside the Seventh Circuit on whether it is appropriate to consider inadmissible evidence, such as hearsay, at the conditional certification stage. *See Adair,* 2008 U.S. Dist. LEXIS 68942, at *21. After a thoughtful analysis of the competing arguments, it concluded "the requirement of admissible evidence to be the better approach." *Id.,* at *22. Importantly, the Court decided the *Adair* conditional certification motion using the "lenient" two-stage certification analysis. *Id.,* at *24-28. Requiring admissible evidence is even more compelling under heightened evidentiary standards.

Similarly, Plaintiff's Motion cannot be decided based upon averments in the pleadings. Plaintiff must offer actual facts in the form of "affidavits, declarations, deposition testimony, or other documents" to demonstrate "a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Martinez v. Regency Janitorial Servs.*, No. 11-C-259, 2012 U.S. Dist. LEXIS 8941, at *3 (E.D. Wis. Jan. 26, 2012) (quoting *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2021). The "court is not required to accept the plaintiffs' allegations as true." *Placide v. Roadrunner Transp. Servs.*, No. 21-CV-1004-JPS, 2022 U.S. Dist. LEXIS 152814, at *9 (E.D. Wis. Aug. 25, 2022) (quoting *Martinez*, 2012 U.S. Dist. LEXIS 8941, at *4). Rather, the court evaluates the record presented by both sides to determine whether plaintiffs are similarly situated to putative class members. *Id*.[3] And, again,

---

[3] *See also Bradley v. Arc of Nw. Ind., Inc.,* No. 2:14cv204, 2015 U.S. Dist. LEXIS 60985, at *10-11 (N.D. Ind. May 11, 2015) (holding that two affidavits submitted by plaintiff were clearly insufficient to meet the modest factual showing standard needed to justify conditional certification and stating that "[o]nce proffered, an affidavit is subject to scrutiny, and "bare assertions" lacking any substantive detail are insufficient for a plaintiff to meet his or her burden) (citing *Allen v. Payday Loan Store of Ind., Inc.,* No. 2:13cv262, 2013 U.S. Dist. LEXIS 169971, at *4,19-20 (N.D. Ind. Dec. 3, 2013) (stating that if declarations in support

these cases were decided under the "lenient" approach. Requiring proof of actual facts is even more compelling under heightened evidentiary standards.

## II. THE COLLECTIVE DEFINTION IN PLAINTIFF'S MOTION IS DEFECTIVE.

Plaintiff's Motion seeks to conditionally certify this collective:

> All current and former hourly-paid employees of Defendant, who at any time between March 27, 2021, and the date notice is authorized by the Court, worked at Defendant's Green Bay, Wisconsin, Monroe, Michigan, Warren, Michigan, Minneapolis, Minnesota, Portland, Oregon, Salt Lake City, Utah, and/or South Bend, Indiana plant(s) or division(s), and recorded their hours worked utilizing Defendant's Kronos timekeeping system.

(Dkt. ##47, p. 1, 48, pp. 1-2.)[4] This definition must be rejected for at least three reasons.

### A. The Collective Definition is Devoid of Any Alleged Wrongful Conduct.

Plaintiff's Motion seeks conditional certification of a collective of current and former employees who worked at certain Pioneer facilities, "and recorded their hours worked utilizing Defendant's Kronos timekeeping system." There is nothing illegal or wrongful with Pioneer using a Kronos timekeeping system to record hours worked by employees – and Plaintiffs' Motion does not assert otherwise. Instead, it acknowledges "hourly employees' punch times directly correspond to their actual hours worked" and "Defendant maintained *an accurate record* of those punch times." (Dkt. #47, p. 2 (emphasis added); *see also* Dkt. #48, p. 2) A collective cannot be certified if, as here, its definition does not reveal how its members were harmed. *Holt v. XTO Energy, Inc.*,

---

of conditional certification were not required to be more probative than bare allegations, the requirement of factual support would be superfluous).

[4] Plaintiff's Motion correctly notes that Pioneer also uses the Kronos system at its Chippewa Falls and Union City facilities. They are not included in the proposed collective definition because hourly employees' time is not rounded. (Dkt. #48, pp. 6-7.) This is because when Pioneer acquired those facilities in 2020 the historical practice was to pay minute-to-minute and that process has not changed. (Dkt. #51-1, p. 14.) The page references to the items in Dkt. #51-1 are to the court file-stamps at the bottom of each page, not the internal page numbers in the documents themselves.

No. MO:16-CV-00162-RAJ, 2016 U.S. Dist. LEXIS 195284, at *3-8 (W.D. Tex. Nov. 10, 2016) (dismissing a class where definition did not include a violation of the FLSA).

Moreover, because timeclock "rounding is not *per se* unlawful" (Dkt. #47, p. 2), adding rounding language to the definition does not solve the problem. *In re Verity Health Sys. of Cal.*, No. 2:18-bk-20151-ER, 2019 Bankr. LEXIS 1818, at *35-36 (Bankr. C.D. Cal. June 11, 2019) (It is not enough to show plaintiffs were subject to the same rounding policy, there must be evidence the rounding policy injured typical members of the putative class).

### B. The Collective Definition Includes Members Who Have Not Been Injured.

As phrased, any former or current Pioneer employee who worked at one of the enumerated facilities during the class period and used the Kronos system is eligible to receive notice under the collective definition. Of course, the fact employees had their time rounded is not itself an injury. And not all Pioneer employees who had their time rounded were harmed. Some, including three current opt-ins, monetarily ***benefitted*** from Pioneer's rounding policy. Yet these individuals, and others like them, fall within the collective definition. This renders the definition overbroad and is grounds for rejection. *Loreto v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 162752, at *11 (S.D. Ohio, Nov. 15, 2013) ("A class is overbroad if it includes significant numbers of consumers who have not suffered any injury or harm.").

### C. The Collective Definition Exceeds the Relief Sought.

Plaintiff's Second Amended Complaint is predicated on allegations of "shaving time" ostensibly resulting in "unpaid" wages and overtime. (Dkt. #45, pp. 1-2, 7, 10-11, 18-24.) These limiting concepts are not in the proposed collective definition. Instead, as proposed, anyone who worked at one of the specified Pioneer facilities during the class period and used Kronos is eligible to receive notice. This is another ground for its rejection. In *Vann v. Dolly, Inc.*, No. 18 C 4455,

2020 U.S. Dist. LEXIS 31678, at *11-13 (N.D. Ill. Feb. 25, 2020), the plaintiff proposed a class of "all individuals who were employed by [defendant] to perform moving services in Illinois during the past three years." *Id*. at *11-12. Because plaintiff's complaint only alleged harms suffered by those employed as "helpers," the definition captured individuals who had not suffered the harms complained of and was rejected. *Id*. at *12-13. Similarly, the court in *Moss v. Putnam Cty. Hosp.*, No. 2:10-cv-00028-JMS-WGH, 2010 U.S. Dist. LEXIS 74735, at *6 (S.D. Ind. July 21, 2010) held plaintiffs "reached too far" with their proposed definition because defendants compensated overtime various ways, only one of which implicated plaintiffs. *Id*. The court held the definition overbroad and denied plaintiff's motion for approval of the FLSA collective action. *Id*.

## III. THE NAMED PLAINTIFF CANNOT REPRESENT THE PUTATIVE COLLECTIVE.

Ms. Laverenz only worked at Pioneer's Green Bay facility. She has never been to, and knows nothing about, Pioneer's other plants/divisions. Even within Green Bay, she only has personal knowledge of the jobs she held, which is a small subset of all positions. Nonetheless, she purports to represent putative collective members from six out-of-state facilities who worked jobs Ms. Laverenz has never held and has no familiarity with. This she cannot do.

### A. The Named Plaintiff Does Not Have Standing to Represent Most of the Collective.

The Supreme Court's "decisions make clear that standing is not dispensed in gross." *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008). For this reason, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y., v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017). The Supreme Court has cautioned that "a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v.*

13

*Robins,* 578 U.S. 330, 338 (2016) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.,* 426 U.S. 26, 40, n.20 (1976); *see also Lewis v. Casey,* 518 U.S. 343, 357 (1996) (same).

Here, Ms. Laverenz lacks standing to assert claims in states in which she does not reside or in which she suffered no injury. She cannot testify to "time shaving" or "unpaid" wages at facilities and jobs she knows nothing about. Ms. Laverenz cannot rely on injuries the putative collective may have suffered and simply assume they are identical those she claims to have experienced.

**B.**    **The Named Plaintiff is Not Similarly Situated to Most of the Collective.**

While Plaintiff's Motion has offered evidence the putative collective was subject to a uniform policy of quarter-hour timeclock rounding, it has made almost no effort to offer admissible evidence establishing that policy, as applied, violated the FLSA (argued in section IV below). And as argued here, Plaintiff's Motion submits no evidence that Ms. Laverenz is similarly situated to most of the putative collective. That critical element of proof is assumed and obfuscated under the pretense of the "lenient" standard of proof and "modest factual showing" arguments in Plaintiff's Motion, that Pioneer challenges above.[5]

**1.**    <u>**No evidence establishes putative collective members are similarly situated across the seven Pioneer facilities in issue.**</u>

---

[5] It should be noted that even Plaintiff's Motion admits that under the *Lusardi* approach, the "modest factual showing" standard is not a mere formality. (Dkt. #48, p. 10; *citing Adair.*) It requires "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected other employees." *Nuchell v. Cousins Submarines, Inc.*, No. 16-CV-232-pp, 2017 U.S. Dist. LEXIS 27879, at *5 (E.D. Wis. Feb. 28, 2017), *citing Zavala v. Wal Mart Stores, Inc.,* 691 F.3d 527 at n.4 (3d Cir 2012). As Magistrate Judge Duffin described it, "although the bar is set low … there is nonetheless a bar. Conditional certification is not automatic. And here [plaintiff] has not demonstrated that she is similarly situated to the members of her proposed class such that the class ought to be conditionally certified *Robles v. Brunswick Corp.,* No. 18-CV-1809, 2020 U.S. Dist. LEXIS 3446, at *20-21 (E.D. Wis. Jan. 9, 2020).

Plaintiff's Motion addresses the "critical inquiry" of whether the representative and putative plaintiffs are similarly situated across the seven facilities in issue by offering five items of proof: (1) the Laverenz Declaration (Dkt. #49); (2) the Brantmeier Declaration (Dkt. #50); (3) the third-party analysis attached to the Walcheske Declaration (Dkt. #51-2); (4) the Moore timekeeping analysis performed by Pioneer (Dkt. #51-1, pp. 35-41); and (5) the Hause deposition transcript (Dkt. #51-1, pp. 1-17). Each will be addressed below, in reverse order.

*Hause testimony*. Ms. Hause concedes a timeclock rounding policy to the nearest quarter-hour across all the facilities in issue. But her testimony contains nothing suggesting that policy is unlawful, or that Pioneer employees are similarly situated across facilities. Indeed, when questioned on these topics, a fair reading of her testimony is the facilities are "different" and "vary." (*Id.,* pp. 5-6, 9-10.)

*Moore timekeeping analysis*. This evidence only demonstrates that over the four months Mr. Moore worked for Pioneer in Green Bay, 1.81 hours of his time was allegedly "shaved." (Dkt. #48, p. 7.) No argument is made, nor could there be one, that this demonstrates putative collective members are similarly situated across all facilities.

*Third-party analysis attached to the Walcheske Declaration*. This Court should reject this information for the reasons noted previously, and because it is textbook hearsay. *See* Fed. R. Evid. 801. The analysis is authored by an unidentified third-party, other than the declarant (Attorney Walcheske), and offered to prove the truth of the matter asserted – that there is a "significant, detrimental impact of Defendant's rounding policy on its hourly employees' hours worked and, thus, their compensation." (Dkt. #48, p. 8.) Moreover, one of the most basic rules of admissibility is that non-testimonial evidence must be authenticated before its introduction and a proper foundation laid. *See* Fed. R. Evid. 901. The third-party analysis meets neither requirement.

*Brantmeier declaration*. Although Mr. Brantmeier testified he visited some of the other Pioneer facilities in issue, he did so once, on his own time while in the area, "to see how they run" in order to improve operations at Green Bay where he worked. (Benson Dec., Ex. 2, pp. 37-42.) Based upon his limited experiences at these locations, he "absolutely" agreed there are physical differences between the facilities. (*Id.,* p. 44.) He has only worked for Pioneer in Green Bay and does not know if there are any differences in the job duties, responsibilities, or pay policies and practices between Green Bay and the other plants. (*Id.,* pp. 36, 43-45.)

*Laverenz declaration*. Ms. Laverenz testified she worked for Pioneer in Green Bay and has never been to or communicated with anyone from another Pioneer facility.

15

(Benson Dec., Ex. 1, p. 28.) She has no personal knowledge of the operations, pay policies, or pay practices at any location beyond Green Bay. (*Id.,* pp. 28-30, 60.)

In this record there is no admissible evidence the named and putative plaintiffs are similarly situated across the Pioneer facilities at issue. The court in *Smith v. United States*, 156 Fed. Cl. 471, 482 (2021), faced a similar situation and concluded it could not "infer that individuals at one location are similarly situated to individuals elsewhere without specific evidence of consistency." *Smith*, 156 Fed. Cl. at 482. It found the plaintiff's lone declaration speaking of her experience in two locations coupled with her statement that other unidentified individuals experienced the same thing was too flimsy a record to support nationwide collective certification. *Id.* Similar conclusions were reached by Judge Pepper in *Nuchell, supra,* 2017 U.S. Dist. LEXIS 27879, at *11 ("Recognizing the limitations of the plaintiff's evidence, however, the court will tailor the conditionally-certified class to the facts contained in the record. The plaintiff's evidence relates only to three of the twenty-three corporate owned Cousins locations in the area, so the court will not certify a class including all twenty-three locations."), and Judge Stadtmueller in *Amandah v. Alro Steel Corp.,* No. 19-CV-1607-JPS, 2020 U.S. Dist. LEXIS 151723, at *5-11(E.D. Wis. Aug. 21, 2020) (finding two worker declarations from the same warehouse insufficient to conditionally certify a class of 1,500 employees across 73 warehouses).

Under any standard of proof, it would be error for this Court to certify a class beyond Pioneer's Green Bay facility.

### 2. No evidence establishes putative collective members are similarly situated across jobs within Pioneer's Green Bay facility.

Plaintiff's Motion offers the same five items of proof, discussed above, to establish the named and putative plaintiffs at Pioneer's Green Bay facility are similarly situated. However, only the Brantmeier and Laverenz declarations contain information germane to this issue.

_Brantmeier declaration_. Mr. Brantmeier has had two jobs at the Green Bay facility, both in maintenance. (Benson Dec., Ex. 2, p. 68.) He has always worked first shift and always 8-hour days. (_Id.,_ pp. 49-50.) He described maintenance work as being unique compared to other the jobs and departments at Pioneer. (_Id.,_ pp. 60-61, 83-86.) He knows nothing about the job descriptions, operational requirements, pay policies and pay practices of any job or department outside of maintenance. (_Id.,_ pp. 84-86.) When questioned at his deposition about the paragraphs in his declaration that relate to "other hourly paid employees," he clarified that those statements are limited to the maintenance department. (_Id.,_ pp. 112-113, 123-125, 130.)

_Laverenz declaration_. Paragraph 3 of Ms. Laverenz's declaration indicates that she worked as a "Racker, Cell Lead, and Production Support." The "Cell Lead" position was in the Racking department. (Benson Dec., Ex. 1, pp. 63-64, 129.) Unlike Mr. Brantmeier, she worked first, second, and third shifts and both 8- and 10-hour days. (_Id.,_ pp. 65-67, 77-78, 117.)  She has never seen a job description for any other jobs or departments and has no personal knowledge of what those employees did, their policies and procedures, or their pay practices. (_Id.,_ 79-80.)

These declarations are limited evidence that employees at the Green Bay facility are arguably similarly situated. Mr. Brantmeier (not the named plaintiff) admits he cannot speak to any job or department other than maintenance. Ms. Laverenz (named plaintiff) similarly concedes her knowledge is limited to the jobs she held. Courts faced with such restricted proof have outright denied conditional certification or narrowed the collective. _See Pfaahler v. Consultants for Architects, Inc._, No. 99 C 6700, 2000 U.S. Dist. LEXIS 1772, at *6 (N.D. Ill. Feb. 8, 2000) (denying certification where plaintiff provided no grounds indicating his knowledge of the work that others performed [or] the circumstances under which the work was performed); _see also Ford v. MIJ, Inc._, No. 2:20-CV-353-HAB, 2021 U.S. Dist. LEXIS 99197, at *6-8 (N.D. Ind. May 25, 2021) (denying conditional certification where plaintiff's complaint and declaration failed to identify other putative plaintiffs or indicate the plaintiff's basis for her knowledge of other worker's circumstances); _Placide_, 2022 U.S. Dist. LEXIS 152814, at *8-9 (denying conditional certification because plaintiff's evidence largely spoke to his own experience and without more, the court could not conclude plaintiff's experience mirrored other employees).

Plaintiff's Motion offers limited evidence relating to a subset of jobs at the Green Bay facility. Conditionally certifying even a Green Bay only collective is fraught with problems of proof.

## IV.  PIONEER'S TIMECLOCK ROUNDING POLICY IS LAWFUL.

Pioneer's timeclock rounding policy does not violate the FLSA. It is "facially neutral" and neutrally applied. Plaintiff's Motion must therefore be rejected because the named and putative plaintiffs did not suffer harm under an unlawful company policy.

### A.  Pioneer's Rounding Policy is Facially Neutral.

It is undisputed that from March 27, 2021, to the present, all the Pioneer facilities at issue rounded time entries to the nearest quarter hour. (Dkt. #48, p. 6.) This policy is *per se* permissible under the FLSA, DOL guidance, and federal caselaw. The FLSA's regulations provide:

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of *recording the employees' starting time and stopping time to the **nearest 5 minutes, or to the nearest one-tenth or quarter of an hour***. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. ***For enforcement purposes this practice of computing working time will be accepted***, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked. (emphasis added)

29 C.F.R. § 785.48(b); *see also* DOL Opinion Letter No. FLSA2019-9 ("It has been our policy to accept rounding to the nearest … one-quarter of an hour as long as the rounding averages out so that the employees are compensated for all the time they actually work."); *Corbin v. Time Warner Entertainment Advance/Newhouse Partnership*, 821 F.3d 1069, 1076 (9th Cir. 2016) ("District courts have weighed in quite extensively, regularly upholding the validity of employers' neutral rounding practices," citing numerous cases therein). It is also undisputed Pioneer's implementation of this policy is facially neutral as it rounded time "up" or "down" to the nearest quarter hour in relation to the employee's punch. (Dkt. #48, p. 7.); *Adams v. Bloomberg LP,* No. 20-cv-7724 (RA),

2023 U.S. Dist. LEXIS 158522, at *10-11 (S.D. N.Y. Sep. 07, 2023) ("the Rounding Policy is neutral on its face because it rounds badge times both up and down to the nearest quarter hour").

**B.  Pioneer's Rounding Policy is Neutrally Applied.**

Plaintiff's Motion contends Pioneer's policy was not neutrally applied and undercompensated employees. (Dkt. #48, pp. 7-9.) The admissible record evidence shows otherwise.

**1.  Opt-In timekeeping information proves neutral policy application.**

Three of the current opt-ins suffered no harm under Pioneer's timeclock rounding policy and two of the three greatly benefitted from it.

**Paul Staeven (Dkt. #43-1, p. 3)**

|  | Actual Hours Recorded | Rounded Hours Paid |
|---|---|---|
| 2024 | 651.50 | 659.00 |
| 2023 | 2413.66 | 2453.00 |
| 2022 | 2285.18 | 2318.75 |
| 2021 | 2098.69 | 2131.50 |

**Total time rounded in favor of Staeven: 114.96 hours**

**Joseph Van Beek (Dkt. #43-1, p. 4)**

|  | Actual Hours Recorded | Rounded Hours Paid |
|---|---|---|
| 2024 | 653.55 | 662.00 |
| 2023 | 2515.34 | 2560.75 |
| 2022 | 2396.20 | 2436.25 |
| 2021 | 2096.08 | 2132.00 |

**Total time rounded in favor of Van Beek: 129.83 hours**

**William Richer (Dkt. #43-1, p. 2 )**

|  | Actual Hours Recorded | Rounded Hours Paid |
|---|---|---|
| 2024 | 366.93 | 367.25 |
| 2023 | 1431.15 | 1429.67 |
| 2022 | 1937.82 | 1940.75 |

**Total time rounded in favor of Richer: 1.3 hours**

(Hause Dec., ¶¶5-7; Exs. 2-4.).[6] Pioneer "overpaid" these employees a combined 246.09 hours under its rounding policy. They have suffered no harm and should not be part of the FLSA

---

[6] Notably, Mr. Richer's records reveal that in some calendar years he benefitted and in some years he was disadvantaged under the rounding policy. But after three and a half years he was slightly overpaid. This is the essence of a neutral rounding policy in application. Indeed, the only Federal Court of Appeals case that has analyzed the rounding regulation in detail emphasized that it is impermissible "to selectively edit []

collective. Yet, as argued above, they are improperly included in the proposed collective simply because they "recorded their working hours utilizing Defendant's Kronos timekeeping system." (Dkt. #47, p. 1.)

In contrast, the two declarants Plaintiff's Motion now relies on – Laverenz and Brantmeier – had a *de minimis* amount of time rounded against them during the relevant period.

| **Amanda Laverenz** | | |
|---|---|---|
| | Actual Hours Recorded | Rounded Hours Paid |
| 2022 | 1236.27 | 1235.75 |
| 2021 | 1905.95 | 1902.75 |
| | | |
| | | |

**Total time rounded against Laverenz: 3.72 hours**

| **Scott Brantmeier** | | |
|---|---|---|
| | Actual Hours Recorded | Rounded Hours Paid |
| 2024 | 596.03 | 595.50 |
| 2023 | 2310.41 | 2308.75 |
| 2022 | 2414.58 | 2412.50 |
| 2021 | 1838.97 | 1837.75 |

**Total time rounded against Brantmeier: 5.49 hours**

Laverenz worked 183 shifts in 2021. (Dkt. #51-2; Hause Dec., ¶¶8, 11, Ex. 5.)[7] The amount of time rounded against her that year averaged *1 minute 5 seconds per shift*. In 2022, rounding produced an even more neutral result: 122 shifts worked, 31 minutes rounded against her, resulting in an average of *15 seconds per shift*. (*Id.*, ¶11.) This is less than a trifle, and as the named plaintiff, Ms. Laverenz's claim is supposed to be representative of the putative class.

Plaintiff's Motion is simply wrong when it asserts she "personally 'lost' approximately 42.03 hours, but 'gained' approximately 20.11 hours" and was therefore "not compensated for approximately 21.92 hours." (Dkt. #48, p. 8.) The erroneous calculation is due to the inclusion of 16.81 hours ostensibly rounded against her from June 16, 2019 to June 15, 2020, and a portion of

---

relevant employment windows to include only pay periods in which [employees] may have come out behind while chopping off pay periods in which they may have come out ahead." *Corbin*, 821 F.3d at 1080.

[7] To ensure an accurate shift count, any shifts that were either PTO days off, holidays, absences, or had double punches on the same day were deleted from the count.

14.81 hours rounded against her from June 16, 2020 to June 15, 2021. (Dkt. #51-2, p. 3.) Ms. Laverenz cannot recover unpaid wages for 2019 or 2020, because it is outside the limitations and proposed collective periods. The correct calculation is a total of 3.72 hours over 2021 and 2022.

Remarkably, Mr. Brantmeier's records show that out of a total of 7,159.99 recorded hours, Pioneer "underpaid" him 5.49 hours. In other words, **99.999% of all wages that he worked**. A rounding system cannot get more neutral than that.

The only other opt-in Plaintiff's Motion relies upon is Mr. Moore, who had 1.81 hours rounded against him. (Dkt. #48, p. 7.) Mr. Moore worked roughly four months for Pioneer, for a total of 63 shifts. (Dkt. #51-2.) This limited data set calls into question whether it can constitute proof of a failure to compensate employees properly "over a period of time," as required by 29 C.F.R. § 785.48(b). Moreover, the time rounded away per shift averaged *1 minute 43 seconds per day*. And there is no evidence from Mr. Moore (or anyone else) to prove that he was actually working during any of this time, which is a threshold level of proof he must meet. *Kellar v. Summit Seating, Inc.* 664 F.3d 169, 177 (7th Cir. 2011) ("[E]mployees who clock in early do not have to be paid as long as they are not working."); *see also Weil v. Metal Technologies, Inc.,* 925 F.3d 352, 357 (7th Cir. 2029) ("an employee can clock in, grab a coffee, read the newspaper, and then start working once his scheduled shift begins – and the employer wouldn't have to compensate him for that time.")

Notably, these three opt-ins (Laverenz, Brantmeier and Moore) *averaged only 1.63 hours per calendar year **combined*** of alleged "underpayment" – a *de minimis* amount that is significantly less than the overpayment to the other three opt-ins discussed above. Clearly, Pioneer's timeclock rounding policy did not systematically underpay employees and was neutral in its application. Thus, it does not violate the FLSA. *See Corbin*, 821 F.3d at 1077-1079 ("Mandating that every

employee must gain or break even over every pay period misreads the text of the federal rounding regulation and vitiates the purpose and effectiveness of using rounding as a timekeeping method.").

### 2. The third-party analysis does not disprove neutral policy application.

Plaintiff's Motion attempts to avoid these inconvenient facts by relying on an unnamed "third party consultant's" "analysis" of 427 Green Bay, Wisconsin employees between June 16, 2019 and June 15, 2022. (Dkt. #48, pp. 7-9.) This effort fails for multiple reasons.

*First,* as argued above, this analysis is unauthenticated, inadmissible hearsay that lacks foundation. It cannot be relied upon to prove the truth of the matters for which it is asserted.

*Second,* much of the third-party consultant's analysis is based on time punch data from 2019 and 2020, time periods that are beyond the statute of limitations and the proposed class period of "March 27, 2021 [to] the date notice is authorized." (Dkt. #47, p. 1.) Thus, the claim that "between 2019 and 2022 … the Defendant shaved approximately 7,222.74 hours" (Dkt. #48, p. 13) is irrelevant and wrong since it includes data from 2019 and 2020.

*Third,* Plaintiff's Motion focuses on the "ratio" between the number of hours rounded for and against the employee. (*Id.,* pp. 8, 13.) This is a red herring. The correct comparison is between the net number of hours rounded against the employee and the total number of shifts worked. Using data from Plaintiff's Motion, 251 hourly employees had a net total of 1,236.36 hours rounded against them (i.e., underpaid) from June 16, 2021 to June 15, 2022. Those employees worked 33,314 shifts during that period. This means the average employee lost ***2.29 minutes per shift worked*** (1,236.36 hours x 60 minutes ÷ 33,314 shifts). (Dkt. ##51-2, p. 10; 48 p. 8.) The 2.29 minutes is the relevant number, not the ratio, because this is a *de minimis* amount of time that reveals neutrality in the application of Pioneer's rounding policy. *See Adams,* 2023 U.S. Dist.

LEXIS 158522, *17-18 (finding under compensation of $15.02 over 13 months due to rounding policy was *de minimis*).

*Fourth,* the unnamed consultant's analysis contains key mathematical errors, specifically with respect to the number of "shifts" each employee worked. A spot check of the consultant's work reveals multiple errors in this regard. A random sampling shows at least 17 employees from June 16, 2019 to June 15, 2022 for whom the consultant underreported the number of shifts worked. (McCann Dec. ¶¶4-7; Ex. 1.) This is a significant error; the number of shifts worked directly impacts the average amount of minutes per shift employees were either over or underpaid.

At bottom, if the data being used is incorrect, the methodology is flawed, the math is wrong, and no one knows who this "consultant" is, this Court cannot rely on the third-party analysis in Plaintiff's Motion to conditionally certify a class involving hundreds of individuals.

### C. Pioneer's *De Minimis* Rounding Policy is Lawful.

The court in *Adams v. Bloomberg L.P., supra,* used this commonsense analysis of a defendant's timeclock rounding policy:

> Rather, Bloomberg's point – with which the Court agrees – is simply that, ***when the alleged underpayment at issue is such a small amount, it does not affect the neutrality of a rounding policy. Indeed, it is unrealistic to expect a rounding policy to even out perfectly to the dollar, even over a substantial period of time***. The federal regulation requires only that the arrangement 'averages out' such that employees are ***not systematically underpaid … That mandate is best read as leaving room for a de minimis amount of variance*** which, at least in this instance, does not raise a triable issue of fact as to the Rounding Policy." (emphasis added)

*Adams,* 2023 U.S. Dist. LEXIS 158522, at *17-18. The *Adams* Court dismissed the FLSA collective action and state class action because the named plaintiff only had 2.55 hours of unpaid time over two and a half years under Bloomberg's Rounding Policy. Plaintiff's Motion should similarly be dismissed as the amount of time rounded against the named and putative plaintiffs is *de minimis*.

The *Adams* court relied on the Ninth Circuit's detailed analysis of the rounding regulation in *Corbin*. The principles articulated in *Corbin* are noteworthy here:

> Employers use rounding policies to calculate wages efficiently; sometimes, in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out in the long-term … Corbin's preferred interpretation would require employers to engage in the very mathematical calculations that the federal rounding regulation serves to avoid … Put differently, the employers would have to 'un-round' every employee's time stamps for every pay period to verify that the rounding policy had benefitted every employee. If that was the case, why would any employer ever implement a rounding policy at all? The proper interpretation of the federal rounding regulation cannot be one that renders it entirely useless … TWEAN's rounding policy passes muster. First, TWEAN's policy is facially neutral, as TWEAN rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or the employee is benefitting from the rounding. TWEAN's policy is not the sort that 'systematically undercompensates employees' by 'only rounding down,' *See's Candy*, 210 Cal.App.4th at 902, 148 Cal.Rptr.3d 690; rather, Corbin can just as easily bank unworked minutes as he can lose worked minutes.

*Corbin*, 821 F.3d at 1077-1079. Other courts have similarly dismissed actions when faced with *de minimis* variations in the application of a rounding policy. *See Vasquez v. Victor's Café 52nd Street, Inc., Vasquez v. Victor's Café 52nd Street, Inc.,* 18-CV-10844 (VSB), 2019 U.S. Dist. LEXIS 165963, at *10 (S.D. N.Y. Sept. 26, 2019) (dismissing FLSA and New York State law class claims because rounding policy "was neutral in its application" and named plaintiff was "undercompensated by less than three hours over the course of three years"); *Boone v. Primeflight Aviation Services, Inc.,* 2018 U.S. Dist. LEXIS 28000, at *24-25, 28 (E.D. N.Y. Feb. 20, 2018) (dismissing FLSA and New York State law class claims because rounding policy "was neutral," "putative class members lost on average 15.67 seconds per shift," and the named plaintiff was undercompensated by $82.17 over a 26 month period).

For these reasons, Pioneer's timeclock rounding policy is lawful and Plaintiff's Motion should be denied.

## V.    PLAINTIFF'S MOTION SHOULD BE DISMISSED BECAUSE SHE CANNOT ES-TABLISH THAT SHE SUFFERED ANY DAMAGES.

Ms. Laverenz testified she spent a "couple minutes" after punching in but before the start of her scheduled shift having conversations with co-workers when she was a "Racker." (Benson Dec., Ex. 1, p. 86.)  She indicated that these meetings lasted 5 minutes for Cell Leads and Line operators. (*Id.,* p. 120.) But Ms. Laverenz also conceded that Pioneer paid her a 30-minute lunch break for every shift she worked in the last 3 years of her employment, which includes 2021 and 2022. (*Id.,* pp. 52-53.) She does not claim she spent her lunch breaks working, or that she is seeking pay for interrupted meal breaks.

Since at least 2020, Pioneer provided non-exempt hourly employees at its Green Bay, Wisconsin facility with a 30-minute paid lunch if they were scheduled for a 10-hour shift. (Hause Dec. ¶12.) By rule, Pioneer is entitled to take an offset or credit for this pay against any time rounded against the named and putative plaintiffs that was not compensated for. *See Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) ("therefore the [30 minute] meal periods are not compensable under the FLSA, and Winnetka may properly offset the meal break against the [15 minute] compensable roll call time worked by plaintiffs"); *Avery v. City of Talladega,* 24 F.3d 1337, 1347 (11th Cir. 1994) (same). In fact, one district court denied a motion for conditional certification under the FLSA precisely because of the possibility that "the paid break time can be used to offset unpaid compensable time." *Hayes v. Greektown Casino, LLC,* No. 12-15502, 2014 U.S. Dist. LEXIS 43347, at *13 (E.D. Mich., March 31, 2014) (citing *Barefield* approvingly).

Because this 30-minute credit/setoff exceeds the few minutes a day Ms. Laverenz claims was improperly shaved away, she has no damages. As such, she cannot serve as the collective's representative and Plaintiff's Motion must be dismissed. The same analysis and result applies to the other opt-ins or putative collective members – the 30 minutes per shift they were paid greatly

exceeded the few minutes any employee may have rounded against them per shift, resulting in no damages. Denying Plaintiff's Motion under these circumstances would be consistent with the Supreme Court's admonition in *Hoffmann-La Roche* to mitigate against "excessive litigation spawned by plaintiffs lacking personal interest in the outcome."

## VI.   IF, *ARGUENDO,* NOTICE IS APPROPIATE, ITS LANGUAGE MUST BE NARROWED AND SENT TO A SMALL SUBSET OF EMPLOYEES.

Given the above, this Court should reject Plaintiff's Motion and deny its request to authorize notice to putative collective members. If, however, the Court finds some form of notice is appropriate, the proposed draft (Dkt. #48-1) must be significantly modified as described below.

*First,* the putative collective description must be narrowed to those individuals who worked at the Green Bay, Wisconsin facility, and notice only sent to them. The failure of Plaintiff's Motion to offer any evidence of how Pioneer's timekeeping policy impacted employees at other plants necessitates that those plants be eliminated from the class description.

*Second,* the proposed collective/class description must be revised to describe the alleged violation of law and harm sustained. As currently drafted, any employee who used the Kronos timekeeping system is eligible, even if Pioneer's rounding policy benefited them. Employees who have not suffered damage cannot be part of the proposed collective nor sent notice about this lawsuit. That will invite false or mistaken claims from ineligible employees, prompt multiple questions from recipients, and erroneously inflate the number of members of the collective/class. *See Ehmann v. Pierce Manufacturing, Inc.,* No. 16-C-247, 2016 U.S. Dist. LEXIS 141894, at *11 (E.D. Wis. Oct. 12, 2016) ("the notice and consent to join form must use [the company's] proposed definition of the putative class as it more accurately reflects the appropriate class and the challenged issue in the case").

26

*Third,* the notice should be narrowed to only go back two years from the date of the filing of the Second Amended Complaint, pursuant to 29 U.S.C. §255(a). A two-year statute of limitations is the presumption under the FLSA, not three. The draft notice improperly uses the FLSA's three-year limitations period for "willful violations," *see* 29 U.S.C. §255(a), without offering any evidence that Pioneer willfully violated the FLSA. As seen above, Pioneer's policy is facially neutral, rounds time up and down, overcompensates some employees, had a *de minimis* impact on others, and is applied neutrally. The Second Amended Complaint only offers conclusory allegations about the supposed willfulness of Pioneer's conduct, which this Court should not accept. And Plaintiff's Motion offers no "new evidence" of willfulness. Thus, if notice is authorized, it should only go to hourly non-exempt employees who worked at the Green Bay, Wisconsin plant since March 27, 2022, two years prior to the filing of the Second Amended Complaint.

*Fourth,* the draft notice's requirement that the "Consent to Join Form" be returned within 60 days should be shortened to 45 days. Forty-five days is more than enough time for a putative collective member to read and review the notice, ask any questions of Plaintiff's counsel, and return it. Many courts have found 45-day notice periods reasonable. *See e.g., Nuchell,* 2017 U.S. Dist. LEXIS 27879, at *13-14 (reducing Plaintiff's 75-day return period to 45 days).

*Fifth,* the requests that Pioneer turn over every employee's email address and "last known telephone number" (Dkt. #48, p. 14) are overbroad, an invasion of privacy, and should be rejected. This information is not needed to mail out notices. *See Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.,* No.11-CV-592-wmc, 2013 U.S. Dist. LEXIS 91617, at *21-22 (W.D. Wis. Mar. 20, 2013) (denying request for class member's telephone numbers for notice distribution); *Abukar v. Reynolds Machine Co., LLC,* No. 19-CV-838-JPS, 2019 U.S. Dist. LEXIS 217256, at *13 (E.D.

Wis. Dec. 18, 2019) (finding that email addresses need only be produced "as needed to deliver any undeliverable notices").

Sixth, Pioneer asks that its denial of wrongdoing statement in the draft notice be put in bold (**"Pioneer denies the allegations in the Lawsuit and asserts that it properly paid all employees all wages owed, including overtime wages owed"**), just like several other key statements in the notice that highlight important aspects of the case. (Dkt. #48-1, p. 1.) Otherwise, the notice is not a balanced and gives the impression that Pioneer violated the FLSA.

Finally, the draft "Consent to Join Form states: "if this case does not proceed collectively, I also consent to join any subsequent action to assert these claims against PMF." (Dkt. #48-1, p. 5.) This sentence, found only in the Consent Form and not previously mentioned in the notice, could easily be overlooked by potential opt-ins, and may not be aligned with their intentions. They may not want to be a part of some undisclosed and undefined "subsequent action." This sentence should be deleted.

## CONCLUSION

For all of the above reasons, irrespective of the standard of proof this Court applies, Plaintiff's Motion should be denied.

Dated this 29th day of April, 2024.

s/ *Paul E. Benson*
Paul E. Benson, SBN 1001457
Mitchell W. Quick, SBN 1001493
MICHAEL BEST & FRIEDRICH, LLP
790 North Water Street, Suite 2500
Milwaukee, Wisconsin 53202
Telephone: (414) 271-6560
Email: *pebenson@michaelbest.com*
Email: *mwquick@michaelbest.com*

*Attorneys for Defendant, Pioneer Metal Finishing, LLC*