UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

AMANDA LAVERENZ,
on behalf of herself and all
others similarly situated,

        Plaintiff,                        Case No. 22-cv-692

      v.

PIONEER METAL FINISHING, LLC,

        Defendant.

---

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION OF NOTICE TO SIMILARLY SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)

---

## <u>INTRODUCTION</u>

In *Plaintiff's Brief in Support of Motion for Conditional Certification and Authorization of Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b)*, ECF No. 48 ("Plaintiff's Brief"), Plaintiff provided evidence demonstrating that putative collective members as defined were uniformly subject to Defendant's same timekeeping and compensation policies and practices as Plaintiff. Specifically, Plaintiff showed that Defendant required its hourly employees to accurately record their hours worked utilizing Defendant's Kronos timekeeping system, to be working at all times they were "punched-in," to begin immediately working after punching in, and to not "punch out" until their work was completed and/or they were relieved of duty. Thus, the evidence showed that employees' punch times reflect their actual hours worked. However, while Defendant maintained a record of those actual hours worked, it did not compensate them based on the same. Rather, Defendant's timekeeping system, to which all putative collective members were subject, uniformly

rounded their punch times to the nearest quarter hour. Defendant then compensated them based on their rounded hours of work, rather than their hours of work as they accurately recorded them.

In addition, while Plaintiff is not required to prove an actual legal violation at this stage of the litigation,[1] Plaintiff provided the Court with an analysis of the overall effect of Defendant's uniform policies on Plaintiff and putative collective members. (Plaintiff's Brief ("Pl. Br."), pp. 7-8, 12-13; ECF No. 51, ¶¶ 6-8, Ex. 2.) That analysis demonstrated that while Defendant's rounding policy may be neutral on its face in that it rounds hourly employees' punch times both forward and backward, it predominantly operated to Defendant's benefit and Plaintiff's and putative collective members' detriment. (*See* Pl. Br., pp. 7-8, 12-13; ECF No. 51, ¶¶ 6-8, Ex. 2.)

By so doing, Plaintiff more than satisfied the first step of the two-step certification inquiry, at which she is required to show nothing more than a "reasonable basis" for believing she is similarly situated to putative collective members. *Miller v. ThedaCare Inc.*, 2016 WL 4532124, at *3 (E.D. Wis. Aug. 29, 2016), as demonstrated "a common policy that affects all of the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011).

In *Defendant's Brief in Opposition to Plaintiff's Motion for Conditional Certification and Authorization of Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b)*, ECF No. 53 ("Defendant's Brief"), Defendant readily admits "[t]here is no dispute…the named and putative plaintiffs were subject to" its rounding policy," (Defendant's Brief ("Def. Br."), p. 1), and that "it is true that employees are subject to the written pay policies in Pioneer's Employee Handbook…." (*Id.* at p. 3.) Defendant also does not deny that it uniformly required Plaintiff and putative collective members to accurately record their hours worked utilizing its Kronos timekeeping system, to work at

---

[1] *Ivery v. RMN Franchise Corp.*, 280 F. Supp. 3d 1121, 1135 (N.D. Ill. 2017) ("A FLSA plaintiff need not prove her claim in order to satisfy the relatively low burden of identifying other 'similarly situated' persons to whom notice should be provided").

all times they were punched-in, to begin immediately working after punching in, and to continue working until their work was completed and/or they were relieved of duty, at which point they punched out. In so doing, Defendant does not actually oppose granting conditional certification, but rather admits the facts necessary for this Court to do so and authorize the sending of notice.

Instead, Defendant suggests that this Court should skip conditional certification and proceed immediately to the second step of the two-step certification process, at which point this Court analyses whether Plaintiff and the members of the then-conditionally certified collective are, in fact, similarly situated, such that they can proceed on a collective basis.[2] It then devotes the entirety of its brief to analyzing this case through the lens of that second step, as well as that of summary judgment, under the apparent assumption that this Court will accept its invitation to abandon the two-step approach.

In short, **none** of Defendant's arguments actually challenge the appropriateness of granting conditional certification. Because Defendant does not dispute that Plaintiff has made the requisite showing at this stage of the litigation, this Court should grant conditional certification, authorize the sending of notice to the putative collective as defined, and reject or ignore Defendant's premature arguments that are more appropriately reserved for decertification.

## <u>ARGUMENT</u>

### I. THIS COURT SHOULD DECLINE DEFENDANT'S INVITATION TO ABANDON ITS TWO-STEP APPROACH TO COLLECTIVE CERTIFICATION

In the Seventh Circuit, district courts have "wide discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). This Court, like all courts in this District

---

[2] *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 856 (N.D. Ill. 2013) ("The second stage in a collective proceeding comes after any opt-ins have appeared and discovery is finished…. At that stage…the court makes a more rigorous examination of the facts relating to whether or not the case may appropriately continue as a collective action."); *Jirak v. Abbott Lab'ys, Inc.*, 556 F. Supp. 2d 845, 848 (N.D. Ill. 2008) ("Once it is known which employees will be part of the [collective], the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis") (internal quotation omitted).

and the majority of district courts across the country, adopted and has a long-standing practice of applying a two-step approach to collective certification pursuant to 29 U.S.C. § 216(b). *See, e.g., Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023), *reconsideration denied*, 2024 WL 218416 (E.D. Wis. Jan. 19, 2024).[3]

Recently, this Court "decline[d an]…invitation to depart from the two-step process," in favor of the Fifth Circuit's framework in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). The Court found "no reason to depart from the two-step approach that has long been applied by courts in this district and through the Seventh Circuit," *Brant*, 2023 WL 4042016, at *2, further noting that "*Swales* is not binding on this court, and other courts that have addressed the issue have refused to adopt *Swales* and continued to adhere to the two-step approach." *Id.*

Indeed, while the Seventh Circuit has had opportunities to weigh-in on the question of whether a particular approach should apply,[4] it has refused to do so, reiterating that it has "repeatedly said that district courts have 'wide discretion to mange collective actions.'" *In re New Albertsons, Inc.*, 2021 WL 4028428, at *2 (citing *Alvarez*, 605 F.3d at 449). Further, the Seventh Circuit has recognized that "the two-step process…is widely approved by other circuits and used in many district courts." *Id.*

While it does not appear that this Court or any other courts in this District have, before now, similarly been asked to depart from the two-step process in favor of the Sixth Circuit's approach in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), other district courts in this Circuit have roundly declined that invitation as well. *See, e.g., Calloway v. AT&T Servs., Inc.*, 2024 WL 1328823, at *3 (N.D. Ill. Mar. 28, 2024) (declining to deviate from the two-step approach given its general use and the Seventh Circuit's continued allowance of it); *Richards v.*

---

[3] This and all other unpublished decisions cited herein that have not already been filed with the Court are attached as exhibits to the May 17, 2024 Declaration of James A. Walcheske filed in support hereof.
[4] *See, e.g., Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020); *In re New Albertsons, Inc.*, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021).

*Eli Lilly & Co.*, 2024 WL 1283536, at *3 (S.D. Ind. Mar. 25, 2024) (finding that "[w]hen presented with the issue, other courts throughout the Seventh Circuit have refused to adopt *Swales* and/or *Clark* and have continued to adhere to the two-step approach," collecting cases, and stating that "[i]n the absence of a Seventh Circuit case overruling this long-applied approach, the Court finds no reason to depart from it"); *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023) (declining to depart from the two-step approach "in the absence of a Seventh Circuit case overruling the historic approach that courts in this District take….").

Just as this Court recently rejected the Fifth Circuit's non-binding framework in *Swales*, it similarly has no reason to adopt the Sixth Circuit's non-binding framework in *Clark*. Indeed, Defendant does not provide any tangible basis for doing so, noting only that this Court was never *required* to adopt the two-step approach and suggesting that doing so is a form of "anchoring bias," as opposed to the rightful exercise of its judicial discretion. (Def. Br., p. 7.) For such reasons, there is no legitimate reason for this Court to abandon its otherwise successful, accepted use of the two-step approach to collective certification pursuant to 29 U.S.C. § 216(b).

Further, should this Court ever decide to denounce its approach, doing so "midstream" as it were would be incredibly prejudicial to Plaintiff. Adopting *Swales* or *Clark* (or a similar framework) requires holding a plaintiff to a heightened standard of proof that is not required at the "lenient" first step of the two-step approach. Indeed, the *Swales* framework requires a plaintiff to prove that she and putative collective members are, in fact, similarly situated – the second step of the two-step analysis. *See Swales*, 985 F.3d at 433. Comparatively, *Clark* requires a plaintiff to show a "strong likelihood" that she and putative collective members are similarly situated. *Clark*, 68 F.4th at 1011.

These frameworks stand in contrast to the "traditional" first step, which is a "non-final step that does not adjudicate any party's rights," *In re New Albertsons, Inc.*, 2021 WL 4028428, at *2, and

5

"is not [even] intended to definitively resolve the question of whether [a] case is appropriate for collective treatment." *O'Neil*, 2023 WL 8802826, at *3. Rather, it is intended "to assess whether it is appropriate to provide court-approved notice, to others **who may be** similarly situated, of the opportunity to join the case." *Id.* (emphasis added); *In re Albertsons, Inc.*, 2021 WL 4028428, at *2.

Satisfying the first step requires "nothing more that *substantial allegations* that the putative class members were together the victims of a single decision, policy, or plan." *Jirak*, 566 F. Supp. 2d at 848 (N.D. Ill. 2008) (emphasis added); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Thus, holding Plaintiff to a heightened standard now that would require such evidence and proof would place her in an impossible position, particularly because the discovery needed to do so is not yet completed.

Notably, this lack of necessary discovery is something of which Defendant is keenly aware. Indeed, in written discovery to date, Defendant has refused to provide information to Plaintiff concerning facilities other than that in Green Bay, Wisconsin, as well as the employees employed at those facilities including the number of such employees, their job titles, job duties, job descriptions, and the timekeeping systems and policies to which they are subject, in part on the basis that such information "*is not relevant to the claims at issue* and renders the requested information even more overbroad and unduly burdensome." (May 17, 2024 Declaration of James A. Walcheske ("Walcheske May Decl."), ¶ 3, Ex. 1) (emphasis added). This lack of information <u>caused by Defendant</u> is the same information Defendant criticizes Plaintiff for lacking, and almost exclusively forms the basis for Defendant arguing that conditional certification should be denied pursuant to the heightened standard(s) it urges this Court to adopt. (*See, e.g.,* Def. Br., pp. 2, 13-18, 26.)

For all such reasons, this Court should decline Defendant's invitation to adopt the frameworks set forth in *Swales* and *Clark*, and should also decline Defendant's invitation to apply an "intermediate

standard" similar to that applied in *Miller*. While Plaintiff has conducted *some* discovery, namely a single deposition and some written discovery, (*see id.* at ¶ 4), "significant discovery" clearly has not occurred as demonstrated by the foregoing. *See Patzfahl v. FSM ZA, LLC*, 2021 WL 4912883, at *4 (E.D. Wis. Oct. 21, 2021) (finding that the "case calls for the traditional lenient standard" because "Defendants only deposed Patzfahl and responded to several interrogatories and requests for production of documents" and comparing cases); *Paswaters v. Krones Inc.*, 2020 WL 419336 (E.D. Wis. Jan. 27, 2020) (declining to apply an intermediate standard where "[a]lthough some documents have been exchanged and three depositions have been taken, it does not appear that Krones has been forthcoming with material information about the potential collective sufficient to determine whether Paswaters is, in fact, similarly situated as the rest of the collective.") Further, as this Court noted in *Miller*, courts have "held that such an 'intermediate standard' of scrutiny would be inappropriate where [like here] a defendant has not provided a list of employees <u>at its other locations</u>." *Miller*, 2016 WL 4532124, at *4 (citing *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013); *accord*, *Bessy v. Per Mar Sec. & Research Corp.*, 2018 WL 1583297, at *3 (W.D. Wis. Mar. 30, 2018).

## II. DEFENDANT'S MERITS ARGUMENTS CONCERNING THE LEGALITY OF ITS UNIFORMLY-APPLIED ROUNDING SYSTEM ARE NOT APPROPRIATELY BEFORE THE COURT AT CONDITIONAL CERTIFICATION

In keeping with Defendant's desire to upend this Court's certification process, Defendant devotes significant time to arguing the ultimate merits of Plaintiff's claims, as if the parties have moved beyond certification to summary judgment. Conflating the two, Defendant argues that (conditional) certification is inappropriate because its rounding policy is "'facially neutral' and neutrally applied." (Def. Br., p. 18.) In support, Defendant notably admits, again, that its rounding policy uniformly applies to "all the Pioneer facilities at issue," before suggesting that its policy is

"legal" because some people benefitted from it, before pitting its calculations against Plaintiff's and suggesting that for reasons unknown (and incredibly irrelevant here), its numbers are "right," and Plaintiff's numbers are "wrong." (*See, generally, id.* at pp. 19-23.)

However, the ultimate merits of Plaintiff's (and the not yet even conditionally certified collective) are beyond the scope of the certification process, generally, let alone the *conditional* certification stage of the litigation. *Ivery*, 280 F. Supp. 3d at 1135 ("A FLSA plaintiff need not prove her claim in order to satisfy the relatively low burden of identifying other 'similarly situated' persons to whom notice should be provided"). Indeed, the merits of Plaintiff's claims are not properly argued or decided at any point during the certification process.

Pursuant to this Court's two-step certification approach, the purpose of the first step is to determine whether other employees *may be* similarly situated to Plaintiff, such that notice should be provided to them. *Ervin v. OS Restaurant Services Inc.*, 632 F.3d 971, 974 (N.D. Ill. 2011); *In re Albertsons, Inc.*, 2021 WL 4028428, at *2; *O'Neil*, 2023 WL 8802826, at *3. During this first step, "it is not the role of the court to resolve factual disputes over the merits of the claim." *Adair v. Wisconsin Bell, Inc.*, 2008 WL 2690716, at *2 (E.D. Wis. July, 2 2008). Indeed, the court does not even "specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855-56 (citation omitted); *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 606 (W.D. Wis. 2006) (noting that "[t]he proper focus at this stage is on plaintiff's submissions").

The second step occurs after the opt-in process is completed and discovery has closed, upon a defendant's motion for decertification. *Austin,* 232 F.R.D. at 605. "[A]t this point the court determines whether the plaintiffs are in fact similarly situated to those who have opted in." *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009); *Jirak*, 566 F. Supp. 2d at 848. However, still then the Court does not decide the ultimate merits of Plaintiff's and the collective's claims.

Indeed, for this reason, courts have forewarned that "[d]etermination of whether plaintiffs have shown that [the defendant] actually violated the FLSA is beyond the scope of [even] a motion for decertification and is therefore discouraged." *See, e.g., Russell v. Illinois Bell Tel. Co.*, 721 F. Supp. 2d 804, 815 (N.D. Ill. 2010) (collecting cases). Similarly, during the certification process a "[c]ourt will not assess the viability of [the defendant's] defenses; rather, it examines whether its defenses are uniformly applicable to all plaintiffs or to subclasses." *Id.* at 820. Rather, the purpose of certification is to address "only whether the plaintiffs are similarly situated based on common practices or policies." *Id.* at 815.

For such reasons, in instances where defendants raise merits arguments, such as those Defendant asserts regarding the "legality" of its uniform rounding system, courts have abstained from adjudicating those merits and rather utilize them for the purpose of analyzing typicality and commonality, and, therefore, the appropriateness of certification. For example, in *Adams v. Aztar Indiana Gaming Co., LLC*, the court found:

> Tropicana of course argues that its [timeclock rounding system] was not a rigged system and it did not violate the law. Whether the policy was rigged against employees to deny them the benefit of the rounding system is a central issue common to the class. Adams's claim that she was in fact denied the benefit of the rounding system is indisputably typical of that class.

587 F. Supp. 3d 753, 767 (S.D. Ind. 2022).

That said, conditional certification is not a "mere formality." *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008). Accordingly, in support of her conditional certification motion, Plaintiff provided evidence demonstrating that Defendant's rounding policy that uniformly applies to "all the Pioneer facilities at issue," (Def. Br., p. 18), disproportionately benefitted Defendant and deprived Plaintiff and putative collective members of compensation earned for work performed. Thus, at minimum, Plaintiff showed the Court that Defendant's uniform policies may be

violative of the FLSA because they "over a period of time, [result] in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).

In sum, while this is not the time for arguing or proving the merits, Plaintiff has provided more than the "minimal showing" required at conditional certification that she and the putative collective members as defined were uniformly subject to the same policies that potentially, uniformly deprived them of compensation, including overtime compensation. Thus, granting conditional certification here is not a "mere formality."

## III. PLAINTIFF HAS STANDING TO PURSUE HER CLAIMS, HER ADEQUACY IS NOT IN QUESTION AT CONDITIONAL CERTIFICATION, AND HER LACK OF PERSONAL KNOWLEDGE REGARDING OTHER FACILITIES IS IRRELEVANT TO THE QUESTION OF WHETHER SHE AND PUTATIVE COLLECTIVE MEMBERS MAY BE SIMILARLY SITUATED

In its Brief, Defendant argues that Plaintiff cannot represent the putative collective as defined because: (1) she "lacks standing to assert claims in states in which she does not reside or in which she suffered no injury," (Def. Br., p. 14); and (2) cannot prove or establish that she and putative collective members are, in fact, similarly situated because she lacks personal knowledge concerning other facilities and employees. (*Id.* at pp. 14-18.) Relatedly, Defendant argues that Plaintiff cannot represent the putative collective and that her motion should be denied because of a potential lack of damages. (*Id.* at pp. 25-26.)

First, and demonstrating a curious lack of understanding the purpose of a collective action, Defendant challenges Plaintiff's "standing to assert claims in states in which she does not reside or in which she suffered no injury." (Def. Br., p. 14.)

Plaintiff filed her claims in this Court, where she indisputably has standing. Although she is likely similarly situated to Defendant's employees of other states (such that this Court should authorize the sending of notice to them), those other employees can consent to join the litigation

*here*; Plaintiff does not assert her claims *there*. Further, this Court has general jurisdiction over Defendant, given that it is incorporated in this State and also has its principal place of business in Green Bay, Wisconsin, (Ans., ¶ 9.) Thus, this Court has jurisdiction over the claim of any collective member against Defendant from outside the State of Wisconsin. For such reasons, Plaintiff's standing in this litigation is not a legitimate question, now or ever.

Second, and as to Defendant's arguments concerning Plaintiff's lack of personal knowledge regarding other facilities and employees, as well as Plaintiff's potential damages, courts have considered and rejected similar arguments and so too should this Court.

In *Ivery*, the defendant argued that "certification is inappropriate because [the plaintiff] is not an adequate representative of the collective" because "she has only a minimal stake in the litigation" due to a lack of damages, and because she "is not familiar with the duties performed by a vast majority of the putative collective because she worked for only RMH Illinois, and that entity only employed around 9% of potential opt-in plaintiffs." 280 F. Supp. 3d at 1135-36. In response, the court found that "the defendants seek to interject the adequacy prong under Rule 23 into the FLSA's certification analysis. But Rule 23 actions are fundamentally different from collective actions under the FLSA, and the FLSA has no such adequacy requirement." *Id.* at 1136 (internal quotation and citation omitted). "Rather, the FLSA requires only that the collective be 'similarly situated' to others in terms of work performed." *Id.* at 1137.

Still, then, the court found such arguments "unpersuasive." *Id.* at 1136. As to damages for example, the court stated: "That other members of a collective may have larger damage claims does not make Ivery an inadequate representative; her right to recovery will require the same showing of liability that any other member of the collective has to make." *Id.*

Further, and unlike all of the cases cited by Defendant in support of its arguments, here Defendant readily admits that it uniformly applied its rounding and compensation policies to all of its facilities at issue. (*See, e.g.,* Def. Br., p. 18) ("It is undisputed that from March 27, 2021, to the present, all the Pioneer facilities at issue rounded time entries to the nearest quarter hour.") Moreover, the evidence shows that the employees at those facilities similarly performed production-related work. (*See id.* at p. 3) (generally discussing its hourly employees' production-related job duties). Thus, that Plaintiff does not have firsthand, personal knowledge of such things is completely irrelevant.

Third and finally, Defendant's suggestion that, at this stage of the litigation, Plaintiff should be required to prove or establish that she and putative collective members are, in fact, similarly situated is an argument reserved for the second step of the certification analysis, after individuals have opted-in and discovery has been completed. *Kelly*, 256 F.R.D. at 629. The appropriate standard for conditional certification is discussed at length herein and, therefore, will not be addressed here again. However, as made clear throughout this Reply, Plaintiff has provided more than the "modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan…." *Bitner v. Wyndam Vacation Resorts, Inc.*, 304 F.R.D. 354, 357 (W.D. Wis. 2014).

## IV. PLAINTIFF'S COLLECTIVE DEFINITION, PROPOSED NOTICE, AND PROPOSED MANNER OF PROVIDING NOTICE ARE APPROPRIATE AND SHOULD NOT BE MODIFIED AS DEFENDANT SUGGESTS

Defendant's Brief suggests multiple modifications to the collective definition, proposed Notice, and other aspects of providing notice. (*See* Def. Br., pp. 2, 11-12, 26-28.) As to the collective definition, Defendant proposes that the "description must be revised to describe the alleged violation of law and harm sustained,"[5] (Def. Br., p. 26; *see also id.* at pp. 11-12), that the "description must be

---

[5] Defendant also argues that Plaintiff's collective definition should be "rejected" for this same reason. (*Id.* at pp. 2, 11-12.) However, courts routinely find that defects in a particular definition "can and should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner v. Northshore Univ.*

narrowed to those individuals who worked at the Green Bay, Wisconsin facility," (*id.* at p. 26), and that it "should be narrowed to only go back two years from the date of filing of the Second Amended Complaint." (*Id.* at p. 27.) As to the Notice and notice process, Defendant suggests that a particular sentence in the Notice should be highlighted, (*id.* at p. 28), a particular sentence should be removed from the Consent to Join Form, (*id.*), that the notice period should be forty-five (45) days, not sixty (60), (*id.* at p. 27), and that it should not have to provide putative collective members' email addresses and telephone numbers to facilitate notice. (*Id.* at p. 27-28.)

For all of the reasons set forth below, Defendant's suggested modifications should be rejected, and this Court should approve the collective as defined, the contents of the proposed Notice, and the methods of providing the same.

### A. Defendant's Proposed Modification to Plaintiff's Proper Collective Definition Would Render It an Improper "Fail-Safe" Definition.

In interpreting Fed. R. Civ. P. 23, which is more stringent than the FLSA, the Seventh Circuit has "long recognized an implicit requirement…that a class be defined clearly and that membership must be defined by objective criteria…." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015) (emphasis added). "Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called 'fail-safe' classes)." *Id.*

"A fail-safe class includes *only* those who are entitled to relief, and is improper because a 'class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'" *Wolfkiel*, 303 F.R.D. at 294 (citing *Messner*, 669 F.3d at 825) (emphasis in

<hr>

*HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Wolfkiel v. Intersections Ins. Servs. Inc.*, 301 F.R.D. 287, 294 (N.D. Ill 2014). Accordingly, this is addressed only as a proposed based for modification herein.

original). "The key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Mullins*, 795 F.3d at 660.

Here, Plaintiff's collective definition is objective in nature, lacks any subjective criteria, and does not make any assumptions about success on the merits. Accordingly, Plaintiff's collective definition is completely proper in nature. Contrarily, modifying it to limit eligibility to those who suffered "harm" as Defendant suggests would actually transform it into an improper "fail-safe" definition.

Further, while individuals may consent to join the collective who ultimately do not have individually meritorious claims, that is not a reason to deny certification or reject a collective definition. *See Messner*, 669 F.3d at 824 (finding, "if a proposed class consists largely (or entirely, for that matter) of members who are ultimately shown to have suffered no harm, that may not mean that the class was improperly certified but only that the class failed to meet its burden of proof on the merits"); *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010) ("Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win").

### B. The Collective Definition Correctly Includes Employees at The Identified Facilities Because Defendant Admits Its Policies Uniformly Applied to Them.

Throughout Defendant's Brief, Defendant admits that the policies at issue in this litigation uniformly applied to Plaintiff and all of its hourly employees at all of the facilities identified in the proposed collective definition. (*See, e.g.,* Def. Br., p. 18) ("It is undisputed that from March 27, 2021, to the present, all the Pioneer facilities at issue rounded time entries to the nearest quarter hour"). Additionally, it does not dispute Plaintiff's evidence that all of Defendant's employees at all of the facilities at issue were expected to perform compensable work at all times they were punched in, that they performed compensable work immediately after punching in, and continued to do so until they punched out. It also did not dispute the facts presented concerning Defendant's facilities, such as their

continuous operations, the need to arrive early for shifts, and the hand-off that occurs between them. Thus, Defendant admits and does not dispute evidence in the record demonstrating the appropriateness of providing notice to hourly employees at all of the identified facilities.

Further, and while any discussion "about dissimilarities in the [collective] is more appropriately decided at step two, after it is known who the [collective] will consist of, and after some of the factual issues can be fleshed out in discovery," *Jirak*, 566 F. Supp. 2d at 850, Defendant nonetheless suggests there *may be* differences in the specific job titles, job descriptions, and departments between its facilities. (*Id.* at pp. 2-3.) However, such differences are immaterial because all of its hourly employees are involved in Defendant's production process, (*see* Def. Br., p. 3) (generally discussing the production-related duties of such employees), demonstrating that they may be similarly situated and should, therefore, receive notice. *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 854 (N.D. Ill. 2017) (finding that "to be similarly situated, the [collective] members need not have identical positions with identical titles, functions, or pay, they just need[] to perform the same general job.").

Moreover, Defendant states that the net result of the "differences" between employees at its facilities is that "**[t]he <u>work they perform prior to the start of their shifts</u> varies greatly**." (Def. Br., p. 3) (emphasis added). Thus, Defendant also admits that its employees at all of its facilities as identified, like Plaintiff, perform compensable work prior to their scheduled shift start times, such that the uniform application of its rounding policy to their hours worked likely results in the deprivation of compensation earned for all of work and work performed.

Finally, that neither Plaintiff nor declarant Scott Brantmeier have personal knowledge of these matters changes nothing. The evidence Plaintiff presents that is both admitted and not disputed is derived from Defendant who does have such knowledge. Further, the suggestion that a

plaintiff must personally, physically work at any and all facilities to be included in a collective is absurd and runs contrary to the representative nature of collective actions.

For all such reasons, the evidence in the record (including but not limited to Defendant's admissions) demonstrates the appropriateness of providing notice to Defendant's hourly employees at all of its facilities as identified. Accordingly, this Court should authorize the same.

**C. The Collective Definition Should Not Be Limited to Two Years.**

In its brief, Defendant suggests that Plaintiff's draft Notice "improperly uses the FLSA's three-year limitations period for 'willful violations,' without offering any evidence that Pioneer willfully violated the FLSA." (Def. Br., p. 27) (citing 29 U.S.C. § 255(a)). However, such a preemptive limitation based on the Defendant's self-assessment of its willfulness is clearly highly improper and decides the merits of the issue without the benefit of adequate discovery or any decision from this Court regarding the same.

As well-stated by the *Ivery* court when rejecting a similar argument:

> [I]n the context of a collective action—where, unlike a class action—the claims of prospective members of the collective are not tolled by the filing of the action and continue to run until an opt-in notice is filed, it is both unnecessary and unfair to require plaintiffs to prove the 'willfulness' of the defendants' alleged actions before permitting notice…. That is why this Court and several others have held that conclusory allegations of willfulness suffice to justify providing notice to the putative collective on the basis of the potentially applicable three-year period.

> In any event, willfulness goes directly to the merits of the case and is thus premature to resolve at this juncture. Indeed, the Court must first determine whether the defendants have even violated the FLSA before it can find that the violation was willful.

> And although the defendants strongly believe that they implemented their overtime policy in good faith, their position is not a certainty, and Ivery should have the benefit of discovery to test the defendants' evidence.

*Ivery*, 280 F. Supp. 3d at 1135 (N.D. Ill 2017) (internal quotations and citations omitted).

As noted by Defendant, "[t]he Second Amended Complaint only offers conclusory allegations about the supposed willfulness of Pioneer's conduct," (Def. Br., p. 27), which, as noted by the court in *Ivery* is all that is required in order to utilize a three (3) year limitations period for notice purposes. *Ivery*, 280 F. Supp. 3d at 1135 (collecting cases). For such reasons, the collective definition's use of a three (3) year limitations period is appropriate and any suggestion to the contrary is premature and improper at this stage of the litigation.

### D. Defendant's Proposed Modifications to Two Sentences Should be Rejected.

In its brief, Defendant requests that a sentence in the Notice be in bold type and that a sentence be removed from the Consent to Join Form. (Def. Br., p. 28.) Neither promote participation in the collective nor the efficient litigation of this matter and, therefore, should not be rejected.

The sentence at issue in the Notice states: "Pioneer denies the allegations of the Lawsuit and asserts that it properly paid all employees all wages owed, including overtime wages owed.") (*Id.*; ECF No. 48-1, p. 1.) Defendant requests that this be in bold type, "just like several other key statements in the notice that highlight important aspects of the case." (Def. Br., p. 28.)

However, nothing in Plaintiff's proposed Notice concerning Plaintiff's claims, Defendant's defenses, or the merits are presently in bold type, but rather are equally *not* in bold type so as to not suggest bias or that either carries more weight than the other. (ECF No. 48-1, p. 1; Walcheske Decl., ¶ 5.) Indeed, the only contents in bold type are section headings, the notice deadline, a statement informing recipients that they are not responsible for Plaintiff's counsel's fees, and the section concerning retaliation.[6] (*See, generally,* ECF No. 48-1.)

---

[6] As this Court is aware, Plaintiff's counsel routinely represents plaintiffs in collective and class actions and, as such, has developed a wealth of experience concerning the questions, issues, and concerns raised by notice recipients. (*See* Walcheske Decl., ¶ 6.) Based on that experience, counsel bolds particular sentences and sections to create heightened

Granting Defendant's requested modification could suggest that its denial of liability carries greater weight and suggest bias to the recipient that does not presently exist. Further, it would place undue emphasis on Defendant's subjective "assert[ion] that it properly paid all employees all wages owed, including overtime wages owed." (*Id.*) The net effect could create a chilling effect on participation that should otherwise be avoided.

As to the Consent to Join Form, Defendant requests removal of the sentence stating, "I also consent to join any subsequent action to assert these claims against PMF." (Def. Br., p. 28.) As already demonstrated in the change of named plaintiff in this litigation and the filing of two amended complaints, this sentence is included in the Form only to ensure that individuals who have already consented to join the litigation do not have to "re-join" the litigation should changes be made, whether it be the named plaintiff, an amended complaint, or something of similar effect. (Walcheske Decl., ¶ 8.) Thus, its inclusion is to ensure the continued, efficient adjudication of the litigation and, therefore, does not require modification.

### E. There is No Justifiable Basis for Shortening the Notice Period.

Defendant further requests that the notice period following conditional certification should be shortened from sixty (60) days to forty-five (45) days, based on nothing more than its subjective belief that "[f]orty-five days is more than enough time for a putative collective member to read and review the notice, ask any questions of Plaintiff's counsel, and return it." (Def. Br., p. 28.) This too should be rejected.

"District courts have broad discretion regarding the details of a notice sent to potential opt-in plaintiffs, including the length of time for the opt-in period." *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 783-84 (C.D. Ill. 2015). In exercising that discretion, courts routinely approve sixty

---

awareness of the deadline to act and to (try to) preemptively assuage concerns regarding attorneys' fees and potential retaliation. (*Id.* at ¶ 7.)

(60) day notice periods. *See, e.g., Bigger v. Facebook, Inc.,* 375 F. Supp. 3d 1007, 1025 (N.D. Ill. 2019); *Slaughter v. Caidan Mgmt. Co., LLC,* 317 F. Supp. 3d 981, 992 (N.D. Ill. 2018); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010 (rejecting a defendant's request for a shorter notice period); *O'Neil*, 2023 WL 8802826. Indeed, "[c]ourts routinely approve a 90-day opt-in period." *Woods,* 140 F. Supp. 3d at 784 (rejecting a forty-five (45) day notice period and citing *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (collecting cases)).

Because sixty (60) days is a commonly approved notice period, and because Defendant provides no legitimate basis for reducing the same, the notice period should not be modified.

### F. Defendant Does Not Object to Plaintiff's Proposed Methods of Providing Notice (Mail and Email), and Thus Has No Basis for Not Providing the Requested Information to Facilitate Notice.

In Plaintiff's Brief, Plaintiff provided legal support for sending of notice via both U.S. mail and email. (Pl. Br., pp. 13-14.) Correspondingly, Plaintiff's Proposed Order Granting Conditional Certification of a Collective Action Pursuant to 29 U.S.C. § 216(b) contained an order that Notice be "distribute[d]…by U.S. mail and email within thirty (30) calendar days…." (ECF No. 47-1, p. 2.)

In order to facilitate notice, Plaintiff asked "that the Court order Defendant to provide Plaintiff's counsel with an Excel spreadsheet containing the first and last names, last known mailing addresses, last known telephone numbers, and last known email addresses of all putative collective members." (Pl. Br., p. 14.) Notably, the request as to telephone numbers was limited to instances in which "notice cannot be successfully provided through U.S. mail and/or email." (*Id.*)

In its brief, Defendant does not object to Plaintiff's proposed methods of providing notice. (*See* Def. Br., p. 27.) Still, it suggests that Plaintiff's requests for email addresses and telephone numbers "are overbroad, an invasion of privacy, and should be rejected." (Def. Br., p. 27.)

It is unclear how Plaintiff can provide notice via email without email addresses. Further, Plaintiff's request for telephone numbers was not a blanket request, but rather for only such instances in which provision of notice via U.S. mail and email is unsuccessful. Thus, there is no clear basis for objecting to providing such information, let alone rejecting Plaintiff's requests for the same.

## **<u>CONCLUSION</u>**

For all of the reasons stated herein and in Plaintiff's Brief, this Court should conditionally certify the collective as defined and authorize the sending of notice to all putative collective members.

Dated this 17th day of May, 2024.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff


 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com