UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMANDA LAVERENZ, on behalf of herself
and all others similarly situated,

Plaintiff,

v.                                                        Case No. 22-C-692

PIONEER METAL FINISHING, LLC,

Defendant.

## DECISION AND ORDER DENYING MOTION
## FOR CONDITIONAL CERTIFICATION

Plaintiff Amanda Laverenz brought this action against Defendant Pioneer Metal Finishing,

LLC, on behalf of herself and other similarly situated hourly employees whom she claims were

not paid their agreed upon wages for all hours worked, including overtime compensation, in

violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Wisconsin state

law.  Pioneer has nine divisions around the country.  Laverenz seeks to pursue her action as a

collective action under 29 U.S.C. § 216(b) to include hourly-paid employees at seven of Pioneer's

divisions who she claims are similarly situated.  She also requests the case to proceed as a class

action under Fed. R. Civ. P. 23, but a motion seeking certification of a class will come later.

Presently before the court is Laverenz' motion for conditional certification and authorization of

notice to these employees.  For the following reasons, Laverenz' motion is denied.

### BACKGROUND

Pioneer is a privately held company headquartered in Green Bay, Wisconsin.  Answer to

2d Am. Compl. ¶ 9, Dkt. No. 46.  Pioneer performs metal finishing on manufactured parts.  Hause

Dep. at 14:5–24, Dkt. No. 51-1. It has nine divisions around the country and employs 700 to 750 hourly workers. *Id*. at 11:17; 19:7–20.

To keep track of hourly employees' time, Pioneer utilizes a rounding software at seven of its divisions. *Id*. at 45:9–48:19. Employees are not paid based on the actual times they "punch in" and "punch out." *Id*. at 51:18–22. Instead, the software rounds the punch time to the nearest quarter hour and Pioneer pays employees based on this time, not the raw time in and out. *Id*. at 50:22–51:8.

It was this rounding practice that gave rise to the present lawsuit. One of Pioneer's hourly employees, Ryan Moore, filed suit on June 15, 2022, alleging the rounding practice deprived him of compensation in violation of the FLSA and Wisconsin wage and hour law.[1] *See* Compl., Dkt. No. 1. As will be explained more fully below, the FLSA permits a plaintiff-employee to sue an employer on behalf of himself and other "similarly situated" employees. 29 U.S.C. § 216(b). A collective action differs from a class action under Rule 23 because in a collective action the other employees must file a written consent with the court to join the lawsuit (sometimes called an "opt in"). *Id*. In other words, they must know about the lawsuit and take steps to join it.

In line with these requirements, Moore brought the action on behalf of himself and other similarly situated employees. *See generally* Compl. In January and February 2024, several other employees opted in. Dkt. Nos. 37, 43. After these employees joined the case, Plaintiffs' counsel informed the court they no longer represented Moore. Dkt. No. 44. Counsel then filed an amended complaint substituting one of the opt-in plaintiffs—Amanda Laverenz—as the lead. 2d Am. Compl., Dkt. No. 45. She had worked as an hourly employee at Pioneer's Green Bay division

---

[1] Moore also alleged that Pioneer unlawfully excluded non-discretionary compensation from his regular rate of pay for calculating overtime. Compl. ¶ 2. The parties eventually resolved this claim, leaving only the dispute over time rounding. Dkt. No. 26.

2

from 2018 to 2022. Laverenz Dec. ¶¶ 2–3, Dkt. No. 49. In the amended complaint, she asserted the same unlawful rounding allegations that Moore had initially brought. *See* 2d Am. Compl.

Laverenz now moves for what has traditionally been called "conditional certification." Dkt. No. 47. She asks the court to facilitate notice to a "collective"—a group of other similarly situated employees—and order Pioneer to provide her with a list of all possible candidates. *See id*. Pioneer objects.

## ANALYSIS

Pioneer asserts two reasons why the court should deny the present motion. First, it argues that the court should employ a heightened burden for conditional certification. Although it acknowledges that district courts in the Seventh Circuit apply a "lenient" standard, it points the court to recent decisions by the Fifth and Sixth Circuits rejecting such a low bar. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021); *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). Pioneer then argues that—no matter what standard is utilized—Laverenz has failed to show that she is similarly situated to the other employees and that Pioneer's rounding practice violated the FLSA. Laverenz disagrees. She urges the court to keep the lenient standard and contends that she has offered sufficient evidence to prove similarity and a violation of law. The court agrees with Pioneer for both reasons.

### A. FLSA Notice Standards

Pioneer argues that the court should not apply the two-step certification process used by district courts in this circuit. It contends the process is inconsistent with the FLSA's purpose and Seventh Circuit case law stressing the similarities of FLSA certification to Rule 23 class certification, which requires "rigorous" scrutiny. Laverenz disagrees, arguing that the test is well-

established, and a more rigorous scrutiny would severely prejudice plaintiffs. Before diving into the merits of either approach, the court finds it appropriate to provide some background.

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981); *see* Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified at 29 U.S.C. §§ 201–219). Congress "sought to protect workers, particularly non-unionized workers, by establishing federal minimum wage, maximum hour, and overtime guarantees that could not be avoided through contract." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253–54 (3rd Cir. 2012). In its original form, the FLSA could be enforced by the Secretary of Labor or through a private action. FLSA, § 16(b), 52 Stat. at 1069; *Knepper*, 675 F.3d at 254. The private actions, however, were somewhat unique. They could be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated." FLSA, § 16(b), 52 Stat. at 1069.

After only a few years on the books, courts began interpreting the FLSA quite broadly. "From 1944 to 1947, the Supreme Court decided three cases determining that on-the-job travel time constituted 'work' within the meaning of the FLSA and therefore contributed to the maximum working hours for the calculation of overtime." *Knepper*, 675 F.3d at 254 (collecting cases). This included "time necessarily spent by employees in walking to work on the employer's premises." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691 (1946).

Workers—and unions, in particular—responded. Within eight months of *Mt. Clemens*, workers filed 1,913 claims, "with an aggregate amount sought approaching $6 billion." *Knepper*, 675 U.S. at 254 n.6 (citing S. Rep. No. 80-48, at 2 (1947). "Nearly all the suits filed under § 16(b)

4

were brought by unions." *Id.* at 254. Typically, the union would file the lawsuit "as representatives of the employees, the real parties in interest." *Id.* To complicate matters, some courts suggested that the FLSA "might permit plaintiffs to join after judgment had been reached," meaning they could "sit out an action, choosing to opt in and be bound by the judgment only after a favorable outcome." *Id.* at 255 (citing *Pentland v. Dravo Corp.*, 152 F.2d 851, 856 (3d Cir. 1945).

Congress eventually stepped in. In 1947, it amended the FLSA through the Portal-to-Portal Act, which sought to end the "excessive and needless litigation." Ch. 52, 61 Stat. 84. Section 5 of the Portal-to-Portal Act prohibited "representative actions" by requiring employees to file a written consent with the court to become a party to the lawsuit. *Id.* § 5(a) (codified at 29 U.S.C. § 216(b)). This "amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Employees could still file what one senator called "collective actions," but no longer could "an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all . . . be a plaintiff in the case." *Knepper*, 675 F.3d at 256 (quoting remarks of Senator Donnell, 93 Cong. Rec. 2, 182 (1947)). This also had the effect of requiring employee-plaintiffs to join the lawsuit early on, rather than after a favorable outcome. *Id.*

Although the Portal-to-Portal Act established procedures such a written consent to curb needless litigation, it still left some questions unanswered. The amendments did not explain how similarly situated employees would learn of the lawsuit or when they should opt in, leaving courts to develop rules of their own. Some began facilitating notices to potential opt-in plaintiffs with

5

explanations of how they could join the lawsuit, and soon enough a circuit-court split developed on the issue. *See Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 90 (D.N.J. 1983) (collecting cases).

In 1987, the Supreme Court weighed in, holding that district courts have the discretion to facilitate notice to potential plaintiffs. *Hoffman-La Roche*, 493 U.S. at 169. It did not draw on any legislative text or history, but instead held that court-authorized notice fell within the heartland of case management—it "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* at 172. But the Court cautioned that such notice differed in form and function from what it called the "solicitation of claims," meaning courts should "take care to avoid even the appearance of judicial endorsement of the merits of an action." *Id.* at 174. And it only confirmed "the existence of the trial court's discretion, not the details of its exercise." *Id.* at 170. In other words, the Court held that district courts may facilitate notice, but said nothing regarding when or how.

Lower courts thus spun their own webs. The earliest and most common approach comes from a New Jersey district court decision in 1983. *See Lusardi*, 99 F.R.D. at 93 n.8. In that case, the district court conditionally "certified" the class—a term borrowed from Rule 23 class actions—but held off on conclusively making the similarity determination until the completion of discovery. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). Upon conditional certification, the court sent out notice and "set up a discovery period in order to determine the actual number of persons similarly situated to the named plaintiffs." *Id.* at 353. This became the dominant approach.

As time went on, every circuit that considered this two-step process adopted it. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (collecting cases). The reasoning harkened back to the Supreme Court's logic in *Hoffman-La Roche*—case management.

6

*Id.* As the Ninth Circuit explained, the two-step approach "has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Id.*

The Seventh Circuit has declined to adopt any specific procedure.[2] *See In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *2 (7th Cir. 2021) (noting that neither Congress, the Supreme Court, nor the Seventh Circuit has provided guidance on "the proper procedure for certification of FLSA collective actions"). By and large, district courts in this circuit adopted the majority approach:

> In the first step, i.e. "conditional certification", a court must determine whether the plaintiff and members of the proposed class are similarly situated enough to allow notice to be sent to prospective plaintiffs. Conditional certification typically occurs where the parties have engaged in only minimal discovery. Therefore, at this early stage, courts apply a more lenient "minimal showing" or "modest factual showing" standard to determine whether the class is similarly situated.

> The modest factual showing is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties. The Court does not, however, make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. A factual nexus that binds potential members of a collective action together is sufficient to meet this burden. If the employees are found to be similarly situated, class members are given notice of the suit and an opportunity to opt-in.

> The second step of certification occurs after substantial discovery is complete, at which time the party opposing collective action typically moves to decertify the class. At this stage, the Court makes a more stringent, factual determination as to whether the members of the class are similarly situated.

---

[2] It is true that the Seventh Circuit has provided some thoughts on the topic. A few years ago, several defendant-employers petitioned the court for a writ of mandamus asking it to review a conditional certification order and determine what standard district courts should apply. *See In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. 2021). The court declined. The defendants had failed to show a "clear and indisputable" right to a writ because court-authorized notice is up to each district court's discretion. *Id.* at *2. In responding to the defendants' argument that conditional certification causes "irreversible harm," the court said that "conditional certification and authorization of notice to others who may be similarly situated is a preliminary, non-final step that does not adjudicate any party's rights." *Id.* Further, "the burdens on these defendants are not substantially different from discovery burdens or other incidental burdens of civil litigation." *Id.* Aside from the fact that these statements are arguably dicta, they do not mean that the Seventh Circuit has given its imprimatur regarding the process. The court simply explained why the process does not cause *irreversible* harm; it gave no comment on the overall merits of the approach.

7

*Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653–54 (S.D. Ill. 2022) (cleaned up). District courts have used this approach so routinely and so reflexively that some have called it the "traditional" or "historic" process. *See Richards v. Eli Lilly & Co.*, No. 1:23-cv-00242-TWP-MKK, 2024 WL 1283536, at *2 (S.D. Ind. Mar. 25, 2024) (collecting cases); *O'Neil v. Bloomin' Brands Inc.*, No. 22 C 4851, 2023 WL 8802826, at *4 n.2 (N.D. Ill. Dec. 19, 2023).

Recently, however, there has been a shift in the tide. In 2021, the Fifth Circuit rejected the *Lusardi* test. *See Swales*, 985 F.3d at 434. First, it observed that the two-step approach "frustrates, rather than facilitates, the notice process" because its "amorphous" nature offers "little help in guiding district courts in their notice-sending authority." *Id*. at 439. Second, the court reasoned that *Lusardi* "distracts from the FLSA's text" because the Act makes no mention of conditional certification. *Id*. at 440.

But aside from these broader concerns, the court pinpointed a real problem. Because many district courts decline to wade into the merits at stage one—as the district court had done in *Swales*—many dispositive, threshold issues are deferred until after notice goes out. *Id*. at 441. A few years earlier, the court reversed a district court's decision that deferred ruling on the applicability of arbitration agreements until the second stage. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019). In the court's eyes, punting the ruling to the second step created a risk that notice would go out to "those who [could not] ultimately participate in the collective." *Id*. at 502.

For these reasons, the Fifth Circuit formally rejected *Lusardi* in *Swales*. 985 F.3d at 441. In its place, the court instructed district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Id*. (internal quotation marks omitted). The court should then "authorize preliminary

discovery accordingly," though it should aim to make the notice determination "as early as possible." *Id*. It emphasized that "the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs." *Id*. Ultimately, the court reminded district courts that "the FLSA's similarity requirement is something that [they] should rigorously enforce at the outset of the litigation." *Id*. at 443.

The Sixth Circuit followed suit two years later. *See Clark*, 68 F.4th at 1010. As a preliminary matter, the court rejected "*Lusardi*'s characterization of the notice determination as a 'certification,' conditional or otherwise." *Id*. at 1009. The term "certification" comes from Rule 23 which governs class actions. *Id*. But "unlike a Rule 23 class action, an FLSA collective action is not representative." *Id*. Rather, it is colloquially called a "collective action" because the similarly situated employees who opt in become parties to the suit with the same status as the named plaintiffs. *Id*. In the Sixth Circuit's view, this distinction matters. Some lower courts developed the mistaken belief that "conditional certification" changes the character of the case, transforming it into a collective action. *Id*. Not so. Notice "has zero effect on the character" of the case. *Id*. Similarly situated employees become parties to the suit when they opt in, not when the court decides to facilitate notice to them. *Id*.

With that aside, the Sixth Circuit adopted neither *Lusardi* nor *Swales*. Like the Fifth Circuit, it rejected *Lusardi* because its low bar created a risk that district courts would engage in claim solicitation, sending notice to employees who are not—in fact—similarly situated. *Id*. at 1010. But neither, in the view of the Sixth Circuit, was *Swales* the proper approach. The court questioned how district courts could make a conclusive similarity determination regarding employees who are not present in the case. *Id*. Such issues "tend to be factbound." *Id*. Instead,

9

the Sixth Circuit observed that court-authorized notice is a "provisional" decision; like preliminary injunctions, a plaintiff should be required to "demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision." *Id*. at 1011. Accordingly, the court held that district courts should employ the "strong likelihood" standard when determining whether potential plaintiffs are similarly situated for purposes of facilitating notice. *Id*.

Despite the Fifth and Sixth Circuits' disagreement regarding what to use in place of *Lusardi*, their joint rejection of the approach has breathed new life into the national debate. To this court's knowledge, however, the shift has yet to convince any district courts in this circuit—*Lusardi* "remains the dance." *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776 (N.D. Ind. 2021).

### B. This Court Rejects *Lusardi*

After careful review, this court will depart from the *Lusardi* test moving forward.[3] The first problem, as this court sees it, is that the procedure frustrates the FLSA's text. The Act permits collective actions for employees who are "similarly situated." But under *Lusardi*'s lenient standard, a court seriously risks notifying workers who are not similarly situated. It is true that a court can decertify the collective at stage two, but at that point many other employees may have opted in, whether they have valid claims or not, and are parties to the case. In other words, a court has permitted employees to join the suit who are not similarly situated, contrary to the FLSA's text. *See Mathews v. USA Today Sports Media Grp., LLC*, No. 1:22-cv-1407, 2023 WL 3676795, at *3 (E.D. Va. Apr. 14, 2023) (noting that *Lusardi*'s lenient standard "is in direct contravention

---

[3] Laverenz is correct that this court very recently declined to depart from *Lusardi*, though it did not affect the outcome of that case. *See Brant v. Schneider Nat'l Inc.*, Case No. 20-C-1049, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023). For the reasons set forth herein, however, the court has decided that the Fifth and Sixth Circuit's criticisms of *Lusardi* are convincing.

10

of FLSA's text which authorizes notice *only* to those who are 'similarly situated' to the named plaintiff").

The second problem is that *Lusardi* appears out of touch with Congress' stated goals in the Portal-to-Portal Act. Congress passed the Act to correct what it perceived as a "general pattern" in FLSA cases—plaintiffs would file a petition and call "upon the employer to furnish specific information regarding each employee during the entire period of employment." *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th. 1982) (quoting H.R. Rep. No. 71, 80th Cong., 1st Sess. 4 (1947)). Congress observed that the "furnishing of this data alone [was] a tremendous financial burden to the employer." *Id*. It is true, of course, that these statements do not necessarily prohibit court-authorized notice, as the Seventh Circuit held. *Id*. But the statements do inform the level of scrutiny the court should employ to send such notice.

This court sees another "general pattern" in FLSA litigation in the 21st century. Under *Lusardi*, the typical FLSA case follows a common path. An individual plaintiff files a complaint and, after the defendant answers, the court schedules the matter for briefing on conditional certification. The parties often engage in limited discovery prior to conditional certification, usually in the form of affidavits or depositions. After this, the plaintiff moves for conditional certification, asking the court to (1) make the preliminary determination that the potential plaintiffs are similarly situated; (2) facilitate notice; and (3) order the defendant(s) to provide plaintiff's counsel with an Excel spreadsheet containing extensive personal information of all members within the putative class, such as their names, dates of birth, addresses, phone numbers, and emails. *See*, *e.g.*, Dkt. No. 48 at 14.

This may not seem all that burdensome but consider the breathtaking scope of many FLSA actions. As an example, one court authorized notice to a collective consisting of "potentially

hundreds of thousands of individuals" and required the defendant to provide to the plaintiff each employee's name, job title(s), dates of employment, address, phone number, location of employment, employee number, email address, and primary language. *See Ray v. Cal. Dep't of Soc. Servs.*, No. CV 17-4239 PA, 2019 WL 6888050, at *5 (C.D. Cal. Dec. 11, 2019). The defendant in that case informed the court that collecting the information would likely take several *months*. *Id.*

As one would expect, imposing such a burden significantly favors plaintiffs. By simply granting a "preliminary" determination on whether other employees are similarly situated, and thereby facilitating notice, an unsuspecting court supplies plaintiffs with substantial settlement leverage. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) ("Generally speaking, expanding the litigation with additional plaintiffs increases pressure to settle, no matter the action's merits."); *Swales*, 985 F.3d at 436 (noting that "the leniency of the stage-one standard, while not so toothless as to render conditional certification automatic, exerts formidable settlement pressure"); *Clark*, 68 F.4th at 1003 ("Yet the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold.").

The court does not mean to suggest that FLSA plaintiffs often bring baseless claims. It is not the notice itself but the *timing* of the notice that troubles the court. It can be an appropriate and effective case-management tool. But notice authorized too early, before any concrete determinations are made as to whether the potential plaintiffs actually are similarly situated, creates bad incentives.

The numbers bear this out. In 2021, for example, district courts nation-wide granted 81% of conditional certification motions. Seyfarth Shaw LLP, *18ᵗʰ Annual Workplace Class Action*

*Report* 10 (2022), https://www.content.seyfarth.com/publications/Workplace-Class-Action-Report-2022/. In that same year, however, district courts granted 53% of decertification motions. *Id*. That means that over half of those conditionally certified putative classes failed to survive upon a more rigorous review.

The third stumbling block is that *Lusardi* too easily compromises the neutrality demanded by *Hoffman-La Roche*. The Supreme Court warned district courts that court-authorized notice "is distinguishable in form and function from the solicitation of claims." *Hoffmann-La Roche*, 493 U.S. at 174. Courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id*. *Lusardi*, however, has this exact effect. The problem is that so many courts refuse to engage the merits prior to sending out notice (as Laverenz likewise asks here). But if the court ignores the merits, how can it be confident the parties are truly similarly situated with respect to the alleged FLSA violation? As the Fifth Circuit explained in *Swales*:

> Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits. Rather, addressing these issues from the outset aids the district court in deciding whether notice is necessary. And it ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs. When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the "similarly situated" analysis and is likely to send notice to employees who are not potential plaintiffs. In that circumstance, the district court risks crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool. *Hoffmann-La Roche* flatly forbids such line crossing.

985 F.3d at 442. Given the concerns noted above, more is required to stay the course.

Finally, *Lusardi* defeats the very goal it set out to accomplish—efficiency. As this court has previously observed, it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. 2008) (quoting another source). In light of the

13

statistics cited above, it appears that a meaningful amount of conditional certification motions that are granted and later challenged fail. In other words, notice is sent to those who should not be notified. That is not efficient. Of course, many are never challenged, given the defendants' interest in avoiding lengthy and costly litigation.

As for "the legitimate goal of avoiding a multiplicity of suits," *Hoffmann-La Roche*, 493 U.S. at 172, *Lusardi*'s leniency encourages FLSA lawsuits by dramatically increasing the settlement value of individual cases by turning what is usually an understandable and unintentional mistake by the employer, i.e., failing to include a nondiscretionary bonus in the base wage used to compute overtime, into a costly collective action without notice or an opportunity to cure. *See Fast v. Cash Depot, Ltd.*, Case No. 16-C-1637, 2018 WL 5832155 (E.D. Wis. Nov. 7., 2018) (for an example of plaintiff's efforts to continue suit even after employer acknowledged it had miscalculated overtime and issued corrective checks to all affected employees), *aff'd*, 913 F.3d 636 (7th Cir. 2019). As a result, courts have seen a significant increase in FLSA cases since *Lusardi*:

> For 50 years or so following passage of the Portal-to-Portal Act, FLSA litigation was, at least relative to today, uncommon. The 1990s "saw a substantial uptick in the number of FLSA claims filed," and the pace at which FLSA cases were filed increased dramatically starting around the turn of the 21st century. In 2000, there were 1,935 FLSA cases filed in federal court. By 2012, the number rose to 8,152 cases.

Christopher M. Cascino & Peter W. Zinober, *Recent Developments In Collective Action Certification Under The Fair Labor Standards Act*, 97-DEC Fla. B.J. 16, 16–18 (2023); *see also* Seyfarth, *supra* at 9 ("The ease with which plaintiffs have achieved first-stage certification in the FLSA wage & hour context surely has contributed to the number of filings in that area."). The number of FLSA cases in this district alone, according to the court's case management - electronic case filing system (CM-ECF), has grown from 54 in 2016 to 97 in 2023.

14

For all of these reasons, the court rejects *Lusardi*. It frustrates the FLSA's text, disturbs the goals of the Portal-to-Portal Act, risks compromising the neutrality required by the Supreme Court in *Hoffman-La Roche*, and is an inefficient case-management tool. Laverenz does not offer any arguments to the contrary; she simply points to the other district courts that continue to apply *Lusardi*. But "path-dependence" or "anchoring bias" are not good reasons to continue a practice. *Swales*, 985 F.3d at 443; *Clark*, 68 F.4th at 1008.

That leaves the question of how and when to facilitate notice. The court finds the Fifth Circuit's approach in *Swales* appropriate. As noted above, the FLSA permits similarly situated employees to proceed collectively; it only makes sense, then, to facilitate notice to employees who are actually similarly situated. Making a similarity determination before the other employees opt in is not rushing the issue, contrary to the Sixth Circuit's view. As the *Swales* court held, district courts should identify—at the outset—what information it will need to determine whether to facilitate notice. Thus, the court will not be flying blind.

Therefore, the court will employ the following procedure for FLSA collectives. The court will "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Swales*, 985 F.3d at 441. The parties should address this issue in the Rule 26(f) plan. At the Rule 16 scheduling conference, the court—as part of its scheduling order—will establish a preliminary window of time for the parties to engage in limited discovery on the issue of similarity, culminating in a motion for notice.

In moving for court-authorized notice, the plaintiff will need to prove similarity by a preponderance of the evidence. That is, after all, "the general burden that a plaintiff bears to prove her case." *Id*. at 443 n.65. In making the similarity determination, the court will employ the three factors commonly used by districts in the Seventh Circuit and elsewhere: (1) the disparate factual

15

and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Dennis v. Greatland Home Health Servs., Inc.*, 591 F. Supp. 3d 320, 330 (N.D. Ill. 2022); *see also Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (holding that, post-*Swales*, the three factors may still serve as a helpful guide in determining similarity prior to notice). This inquiry also requires the court to assess the merits. Even under *Lusardi*, this court and many others addressed merits questions at the conditional certification stage. *See Adair*, 2008 WL 4224360, at *11; *Binissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, at *4 (N.D. Ill. Feb. 26, 2014). After all, if the record reveals that the plaintiff is unlikely to succeed on the merits, then court-authorized notice would amount to the solicitation of baseless claims. This the court will not do.

Once a plaintiff moves for notice, the court has three options: (1) deny the motion, finding the plaintiff failed to meet her burden; (2) order supplemental discovery, if necessary; or (3) grant the motion as originally proposed or as modified (the court may, for example, approve of notice but only to a narrower group). *Swales*, 985 F.3d at 443. The court will make a determination and then permit the parties to complete discovery.

At this point, the court need not "certify" or "decertify" the collective. As the Sixth Circuit pointed out, FLSA suits are not class actions. *Clark*, 68 F.4th at 1009. Once the similarly situated employees opt in, they become parties to the suit no different from the lead plaintiff. *Id*. This means that once discovery closes, only two issues remain: (1) whether the plaintiffs' claims survive dispositive motions (if any) and, if they survive, (2) whether their cases should be tried together or severed into multiple trials.

In sum, the court will adopt these procedures for FLSA cases going forward. They will (1) ensure that notice goes to employees who are actually similarly situated; (2) promote judicial economy by eliminating motions to conditionally certify and decertify so-called "collective classes"; and (3) allow for a more efficient resolution of FLSA cases. With this standard in mind, the court now turns to the present case.

### C. Laverenz Has Not Met Her Burden

As an initial matter, the court declines to consider the statistical report performed by Laverenz' third party consultant that purports to analyze Pioneer's timekeeping data. Laverenz' counsel attached the report to his declaration without any further information, rendering it hearsay. *See* Fed. R. Ev. 801. As this court has previously held, a plaintiff cannot rely upon inadmissible evidence in its motion for notice. *Adair*, 2008 WL 4224360, at *8; *see also Boyd v. Alutiiq Glob. Sols., LLC*, No. 11-CV-0753, 2011 WL 3511085, at *5–6 (N.D. Ill. Aug. 8, 2011).

With that aside, the court concludes that Laverenz has failed to meet her burden. As noted above, an FLSA plaintiff must prove by a preponderance that she is similarly situated to the employees she asks to notify. This question turns on three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Dennis*, 591 F. Supp. 3d at 330.

Under the first factor, a plaintiff must show that her factual and employment setting bore a nexus to other employees. The purpose of this factor is to ascertain whether the employees' claims require detailed, fact-specific inquiries.

Two reasons tilt this factor in Pioneer's direction. First, the record reveals that the effects of the rounding policy were highly individualized. The parties provided timekeeping reports for

six employees: Laverenz, Moore, and opt-in plaintiffs Paul Staeven, Joseph Van Beek, William

Richer, and Scott Brantmeier. Three of the employees benefitted from the rounding. Over the

course of four years, Paul Staeven gained 114.96 extra hours. Dkt. No. 54-2. Over the course of

four years, Joseph Van Beek gained 129.83 extra hours. Dkt. No. 54-3. And over the course of

three years, William Richer gained 1.3 extra hours. Dkt. No. 54-4. By contrast, the rounding

caused the other three employees to lose some (minimal) compensation. Over the course of two

years, Laverenz lost 3.72 hours. Dkt. No. 54-5. Over the course of four years, Brantmeier lost

5.49 hours. Dkt. No. 54-6. And over the course of four months, Moore lost 1.81 hours. Dkt. No.

51-1 at 35–41. This evidence shows that significant factual differences exist regarding how the

policy affected each employee. The rounding benefitted some and negatively affected others.

Second, Laverenz has failed to show she is similarly situated "regarding the factual

question of whether the policy was used *in such a way that it violates the FLSA*." *Kelly v.

Healthcare Servs. Grp., Inc.*, No 2:13–cv–00441–JRG, 2015 WL 3464131, at *3 (E.D. Tex. June

1, 2015) (emphasis added). Although time-rounding is not contemplated by the FLSA itself, the

Department of Labor permits the practice:

> It has been found that in some industries, particularly where time clocks are used,
> there has been the practice for many years of recording the employees' starting time
> and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of
> an hour. Presumably, this arrangement averages out so that the employees are fully
> compensated for all the time they actually work. For enforcement purposes this
> practice of computing working time will be accepted, provided that it is used in such
> a manner that it will not result, over a period of time, in failure to compensate the
> employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). In other words, neutral time-rounding does not violate the law. *See

Houston v. Saint Luke's Health Sys., Inc.*, 76 F.4th 1145, 1150 (8th Cir. 2023); *Aguilar v. Mgmt.

& Training Corp.*, 948 F.3d 1270, 1288 (10th Cir. 2020); *Corbin v. Time Warner Entm't-

Advance/Newhouse P'ship*, 821 F.3d 1069, 1075 (9th Cir. 2016).

18

Of course, the regulation does not specify the relevant "period of time" during which the compensation should even out. The few courts of appeals that have addressed the issue have held that a plaintiff cannot cherry-pick a pay period or two; the rounding policy must "average out *in the long-term*." *Corbin*, 821 F.3d at 1077; *see also Saint Luke's*, 76 F.4th at 1151 (same). Moreover, the fact that the Department of Labor permits neutral rounding policies suggests minor underpayment does not violate the FLSA:

> [W]hen the alleged underpayment at issue is such a small amount, it does not affect the neutrality of a rounding policy. Indeed, it is unrealistic to expect a rounding policy to even out perfectly to the dollar, even over a substantial period of time. The federal regulation requires only that the arrangement "averages out" such that employees are not *systematically* underpaid. That mandate is best read as leaving room for a de minimis amount of variance, which, at least in this instance, does not raise a triable issue of fact as to the permissibility of the Rounding Policy.

*Adams v. Bloomberg L.P.*, No. 20-cv-7724 (RA), 2023 WL 5769492, at *6 (S.D.N.Y. Sept. 7, 2023). As the Ninth Circuit reasoned, the very premise of time-rounding involves some level of variance. *Corbin*, 821 F.3d at 1077. If the law required employers to pay their employees down to the very cent, they would "have to 'un-round' every employee's time stamps for every pay period to verify that the rounding policy had benefitted every employee. If that was the case, why would any employer ever implement a rounding policy at all?" *Id*.

Laverenz has failed to provide evidence of systematic and meaningful underpayment. She lost out on 3.72 hours over two years. Dkt. No. 54-5. In 2021, this averaged out to a loss of one minute and five seconds per shift. Dkt. No. 54 ¶ 11. In 2022, it averaged out to a loss of 15 seconds per shift. *Id*. Brantmeier and Moore suffered equally miniscule losses. Brantmeier lost 5.49 hours over four years, and Moore lost 1.81 hours over four months. Dkt. No. 54-6; Dkt. No. 51-1 at 35–41. Bottom line, these minimal losses are not enough to show an FLSA violation. *See Vasquez v. Victor's Café 52nd Street, Inc.*, No. 18-CV-10844 (VSB), 2019 WL 4688698, at *4

(S.D.N.Y. Sept. 26, 2019) (concluding that a loss of less than three hours over the course of three years was de minimis undercompensation).

The second factor—whether Pioneer asserts defenses that are individualized to each employee—also leans in its favor. Pioneer provided a 30-minute paid lunch for all hourly employees at the Green Bay division who worked a 10-hour shift. Hause Dec. ¶ 12. For purposes of the FLSA, "a meal period is not work time if 'the employee's time is not spent predominantly for the benefit of the employer.'" *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) (quoting another source). Under such circumstances, "meal periods are not compensable under the FLSA, and [the employer] may properly offset the meal break against the compensable roll call time worked by [the employees]." *Id.*

The timesheets for Laverenz, Brantmeier, and Moore reveal that each worked some 10-hour shifts. *See* Dkt. Nos. 51-1 at 39; 54-5 at 1; 54-6 at 1. This means that the paid meal breaks would offset any rounding losses unless the employees spent the break "predominantly for the benefit of the employer." *Barefield*, 81 F.3d at 710. That is a fact-specific inquiry.

The final factor requires the court to review procedural and fairness considerations. Although this is an independent factor, resolution of the other two factors bear relevance here. Given the court's conclusion that the plaintiffs' claims involve highly individualized inquiries and defenses, it would seem particularly inefficient and unfair to notify a broad class of employees. An FLSA plaintiff has no right to notice; it is merely a procedural tool used by district courts to manage especially similar cases. Authorizing notice in a case such as this would turn a tool into a sword. Many a plaintiff would likely join the line, requiring Pioneer to defend dozens—possibly hundreds—more claims despite the fact that Laverenz has not even showed a violation of law. Therefore, the court finds this factor weighs in Pioneer's favor as well.

In sum, Laverenz has not met her burden.  Indeed, the court is satisfied that, even under the more lenient standard that this court has applied in the past, her showing falls short of what is needed to show the similarity required to justify the broad notice she requests.  This is not to say the claims themselves are doomed; it simply means she has failed to provide a sufficient basis for the court to facilitate notice to potential plaintiffs.  Her motion for conditional certification and notice is, therefore, denied.

## CONCLUSION

For these reasons, Laverenz' Motion for Conditional Certification and Authorization of Notice to Similarly Situated Persons (Dkt. No. 47) is **DENIED**.  Pioneer's motion for leave to file a sur-reply brief (Dkt. No. 61) is **GRANTED**.  The Clerk is directed to set the matter on the court's calendar to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 21st day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

21